PEOPLE v HARDY

Docket No. 128458. Submitted December 4, 1990, at Grand Rapids.
Decided April 1, 1991, at 10:20 A.M. Leave to appeal denied, 437
Mich 1040.

Kimberly Hardy was charged in the Muskegon Circuit Court
with, inter alia, delivery of less than fifty grams of a mixture
containing cocaine to her son. The defendant admitted that she
used cocaine thirteen hours before prematurely giving birth.
The court, R. Max Daniels, J., denied the defendant's motions
to quash the information and to suppress the results of drug
screenings of her and of her son. The defendant appealed by
leave granted.

The Court of Appeals *held:*

The circuit court erred in denying the defendant's motion to
quash the cocaine charge. The use of cocaine by a pregnant
woman, which may result in the postpartum transfer of cocaine
through the umbilical cord to her infant, is not the type of
conduct that the Legislature intended to be prosecuted under
the Public Health Code provisions proscribing the delivery of
cocaine, MCL 333.7401; MSA 14.15(7401).

Reversed.

REILLY, P.J., concurring, stated that the use of a controlled
substance by a pregnant woman, without more, does not sup-
port a charge of delivery of the controlled substance to a fetus
in utero or of delivery to a prematurely born infant because, in
the first instance, a fetus in utero is not a person to whom
controlled substances can be delivered and, in the second
instance, it would be unreasonable to interpret the Public
Health Code to allow such a charge when the ingestion of the
controlled substance occurs at a time when the woman has no
reason to know that birth will occur within hours of her use of
the controlled substance.

*Frank J. Kelley,* Attorney General, *Gay Secor
Hardy,* Solicitor General, *Tony Tague,* Prosecuting
Attorney, and *Kevin A. Lynch,* Senior Assistant
Prosecuting Attorney, for the people.

*Miller, Canfield, Paddock & Stone* (by *Walter B. Connolly, Jr.,* and *Alison B. Marshall*), *Alan S. Rapoport,* and *Chrystal Roach* (*Paul J. Denefeld, Kary L. Moss, Lynn Paltrow,* and *Louise Melling,* of Counsel), for the defendant.

Amicus Curiae:

*Paul, Weiss, Rifkind, Wharton & Garrison* (by *Jane A. Levine* and *Sara L. Mandelbaum*) (*Mary Sue Henifin* and *Nadine Taub,* of Counsel), for American Public Health Association.

Before: REILLY, P.J., and MURPHY and NEFF, JJ.

MURPHY, J. Defendant appeals by leave granted from a May 17, 1990, Muskegon Circuit Court order denying her motions (1) to quash the felony information charging her with delivery of less than fifty grams of a mixture containing cocaine, MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv), (2) to suppress the results of drug screenings performed on her and her minor child, and (3) to exclude the results of a drug screening performed on her minor child's urine. We reverse.

Defendant was 7½ months pregnant when she gave birth to a male child on August 20, 1989. The delivery proceeded without complication, and the attending physician, Dr. Janice McDonald, noted that defendant and her baby appeared to be in good health.

Upon further examination the next day, however, Dr. Danny Mikesell observed that defendant's baby was small for his gestational age and had a distended abdomen. He was also spitting up a fair amount and was not eating well. These physical characteristics prompted Dr. Mikesell to suspect that an infection or drug ingestion was

interfering with his normal development. The doctor then ordered that a drug screening be performed on the child's urine, the results of which indicated the presence of cocaine metabolites.[1] Defendant later admitted to police that she smoked crack—a derivative of crystallized cocaine—less than thirteen hours before giving birth.

On October 13, 1989, the Muskegon County Prosecutor filed a two-count felony complaint charging defendant with second-degree child abuse, MCL 750.136b(3); MSA 28.331(2)(3), and delivery of less than fifty grams of a mixture containing cocaine, MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv). The child-abuse charge arose out of allegations that defendant ingested cocaine while she was pregnant, causing serious physical harm to her minor child. Defendant was also charged with delivery of cocaine because, according to the prosecutor, once ingested the cocaine, was transmitted from defendant's system through the umbilical cord during the period after the baby had passed through the birth canal until the umbilical cord was severed after birth.

Dr. Charles Winslow, a specialist in neonatology, testified at defendant's preliminary examination that the time of a child's birth is recorded when the child is external to the mother, i.e., is out of the birth canal, not when the umbilical cord is clamped or severed.[2] Dr. Winslow further testified that, assuming a pregnant woman ingested cocaine no more than thirteen hours before giving birth to her child, "it is highly probable that finite amount[s] of cocaine were moving through the

---

[1] Dr. Mikesell testified that cocaine metabolites are the product of cocaine after it has been broken down in the body.

[2] During the preliminary examination, the parties stipulated that less than one minute had elapsed from the time the child came out of defendant's birth canal until the umbilical cord was severed.

umbilical cord in the direction of mother to baby between the time the child's body parts were delivered and the umbilical cord [was] subsequently clamped."

The district judge found that the evidence presented at the preliminary examination was sufficient to bind defendant over to circuit court on both the count of child abuse and the count of delivery of cocaine.

On April 11, 1990, defendant moved in circuit court to quash the felony charges and to suppress the results of the drug-screening tests. Following extensive argument, the circuit judge granted defendant's motion with respect to the charge of second-degree child abuse. He reasoned that there was insufficient evidence that defendant's ingestion of cocaine, while pregnant, caused serious physical harm to her child.[3] However, the circuit judge denied defendant's motions relating to the delivery of cocaine charge as well as to the admissibility of the drug-screening tests.

Defendant first contends that the circuit court committed error requiring reversal in denying her motion to quash the delivery of cocaine charge. We agree.

In reviewing the circuit court's denial of defendant's motion to quash, this Court must determine whether the examining magistrate abused its discretion in binding defendant over to circuit court. A reviewing court may substitute its judgment for that of an examining magistrate only where there has been such an abuse. *People v Talley,* 410 Mich 378, 386; 301 NW2d 809 (1981); *People v Cowley,* 174 Mich App 76, 79; 435 NW2d 458 (1989). We first note that our review of this issue is appropriate because defendant moved to quash the infor-

---

[3] The people have not taken an appeal from the circuit court's order dismissing the second-degree child-abuse charge.

mation in circuit court. Cf. *People v Rashid,* 154 Mich App 762, 764; 398 NW2d 525 (1986).

The primary goal of a court when interpreting statutes is to ascertain and give effect to the intent of the Legislature. A statute must be construed in light of the purpose to be accomplished by its enactment. *People v Ham-Ying,* 142 Mich App 831, 835; 371 NW2d 874 (1985).

It is well settled that penal statutes are strictly construed, absent a legislative statement to the contrary. *People v Boscaglia,* 419 Mich 556, 563; 357 NW2d 648 (1984). The Legislature has expressly provided that the provisions of the Public Health Code "shall be liberally construed for the protection of the health, safety, and welfare of the people of this state." MCL 333.1111(2); MSA 14.15(1111)(2); *Ham-Ying, supra.* Nevertheless, whether strictly or liberally construed, a penal statute must be sufficiently definite and explicit to inform those who are subject to it what conduct will render them liable to its penalties. *People v Dempster,* 396 Mich 700, 715; 242 NW2d 381 (1976). A person is not required, at peril of life, liberty, or property, to speculate concerning the meaning of criminal statutes. *Id.*

Under the facts presented in this case, the application of MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv) to prosecute defendant for *delivery* of cocaine is so tenuous that we cannot reasonably infer that the Legislature intended this application, absent unmistakable evidence of legislative intent.

We find ourselves in agreement with the Supreme Court's statement in *People v Gilbert,* 414 Mich 191, 212-213; 324 NW2d 834 (1982):

> A court should not place a tenuous construction on this statute to address a problem to which

legislative attention is readily directed and which it can readily resolve if in its judgment it is an appropriate subject of legislation.

The Legislature is an appropriate forum to discuss public policy, as well as the complexity of prenatal drug use, its effect upon an infant, and its criminalization.

The Legislature has clearly proscribed defendant's *possession* and *use* of cocaine, and has provided criminal penalties for such conduct. MCL 333.7403(2)(a); MSA 14.15(7403)(2)(a); MCL 333.7404(2)(a); MSA 14.15(7404)(2)(a). However, this Court is not at liberty to create a crime. We are not persuaded that a pregnant woman's use of cocaine, which might result in the postpartum transfer of cocaine metabolites through the umbilical cord to her infant, is the type of conduct that the Legislature intended to be prosecuted under the *delivery*-of-cocaine statute, thereby subjecting the woman to the possibility of up to twenty years in prison and a fine of $25,000. This, in our opinion, would not be a reasonable construction of the statute.

In view of our resolution of this issue, we need not address the remaining issues raised by defendant on appeal.

Reversed.

NEFF, J., concurred.

REILLY, P.J. *(concurring).* I concur that the Legislature did not intend that the defendant should be held responsible for delivery of controlled substances under the circumstances of this case. I write this concurring opinion because my reasons for reaching this conclusion differ from those

stated by the majority. Also, I believe further comment is necessary to address some of the arguments raised by the prosecutor.

The statute under which defendant was charged provides that "a person shall not manufacture, *deliver,* or possess with intent to . . . deliver a controlled substance" unless it has been properly prescribed for the user. MCL 333.7401(1); MSA 14.15(7401)(1). (Emphasis added.) The term "deliver" is defined in MCL 333.7105(1); MSA 14.15(7105)(1) as the actual, constructive, or attempted transfer of a controlled substance from *one person to another.* "Person" means an "individual, partnership, cooperative, association, private corporation, personal representative, . . . or any other legal entity." MCL 333.7109(1); MSA 14.15(7109)(1); MCL 333.1106; MSA 14.15(1106).

The prosecutor first argues that the charge against the defendant should be allowed because the intentional inhalation of the fumes from the crack cocaine, and the subsequent transmission of the cocaine metabolites to the fetus, was a knowing transfer of cocaine derivatives from the pregnant woman to her fetus. The prosecutor contends, without supporting authority, that the fetus should be considered a person because it is a legal entity. I believe that position should be rejected because "legal entity" is defined as:

> Legal existence. An entity, other than a natural person, who has sufficient existence in legal contemplation that it can function legally, be sued or sue and make decisions through agents as in the case of corporations. [Black's Law Dictionary (5th ed).]

Further, at the time the Michigan Legislature enacted the initial narcotics statute prohibiting

the unlawful delivery of controlled substances,[1] an unborn fetus was not considered a person, i.e., an individual, corporation, partnership, cooperative, or other legal entity under Michigan law. Even today, under *Roe v Wade,* 410 US 113, 160; 93 S Ct 705; 35 L Ed 2d 147 (1973), and *Jarvis v Providence Hosp,* 178 Mich App 586; 444 NW2d 236 (1989), although an unborn fetus is considered to be a "potential human being," entitled to protection in its advanced stage of development, it is not afforded the full rights and obligations of a person, an individual, or a legal entity.[2]

In *Roe,* the United States Supreme Court held that states have a legitimate interest in protecting an unborn fetus from harm during the last trimester of pregnancy, superseding a pregnant woman's right to control her own body, even though the fetus is not a person entitled to constitutional protection. Nonetheless, we have no historical or scientific basis to determine that the Legislature intended to protect an unborn fetus against the pregnant mother's *use* of narcotics, which is not proscribed by the controlled substances act, when it enacted laws regulating the *possession* or *distribution* of controlled substances. The defendant may properly have been charged with *possession* of cocaine when she admitted to smoking crack. However, the *use* of controlled substances by a pregnant woman, without more, does not support

[1] The Uniform Narcotic Drug Act, 1937 PA 343, was the first comprehensive statute enacted in this state to regulate the manufacture, possession, and use of controlled substances. That statute was repealed and replaced by the Controlled Substances Act, 1971 PA 196, which in turn was repealed and replaced by the Public Health Code, 1978 PA 368.

[2] See *People v Guthrie,* 97 Mich App 226; 293 NW2d 775 (1980), in which negligent homicide charges were dismissed because at common law "the killing of an unborn child was not a homicide . . . for the reason that the fetus was not considered a 'person' . . . before its birth."

the additional charge of *delivery to another* while the fetus is still in utero.

As an alternative to his "legal entity" theory, the prosecutor contends that defendant delivered cocaine to her child during the period (less than one minute) after the child had passed through the birth canal and before the umbilical cord was severed. According to the prosecutor's theory, defendant's act of *using* the cocaine became the criminal act of *delivery* by virtue of the subsequent unanticipated, uncontrollable, and premature birth of her child. If we were to accept the prosecutor's position, and interpret the controlled substances act to permit the charge made here against defendant, then any pregnant woman who uses controlled substances could be charged with the crime of delivery if the birth process occurs within approximately thirteen hours from the time of use, before the controlled substances are eliminated from the unborn fetus' system. Such a holding would lead to an absurd result. A pregnant woman who engages in the use of controlled substances and is not in labor or is not within hours of her anticipated delivery date may or may not be engaged in the delivery of a controlled substance, depending upon the occurrence of a contingency which is not within her control and is not reasonably anticipated at the time the drugs are used. A woman should not be charged with the more serious offense of delivery for engaging in an activity which may or may not meet the criteria for committing that offense, depending upon contingencies beyond her control.[3]

---

[3] This case is distinguishable from *State v Cornelius*, 152 Wis 2d 272; 448 NW2d 434 (1989), review den 152 Wis 2d lxi (1990), in which the defendant was charged with homicide stemming from the death of a baby within hours after its premature delivery, which was precipitated by an auto accident caused by the defendant's intoxication. The Wisconsin Court of Appeals interpreted the homicide statute to apply

It is well documented that an increasing number of pregnant women in our society are abusing illicit drugs. However, there is no empirical evidence before this Court, nor am I aware of any such evidence, which indicates that the use of illicit drugs listed in the controlled substances act precipitates premature birth within hours after use. Therefore, a pregnant woman who is not in labor and is not within hours of her anticipated delivery date has no reason to suspect that birth is imminent within hours after that use. Accordingly, a pregnant woman who uses drugs before going into labor and who is not due to deliver should not be held responsible for knowingly delivering a controlled substance to another person.[4]

I recognize that premature births or miscarriages (spontaneous abortions) may occur during any pregnancy. However, I am not aware of any

to the defendant's situation, noting that the common law held that one who fatally injures a fetus, which is later born alive and dies, has committed homicide. The *Cornelius* ruling is inapposite to the facts presented here because there was no common-law regulation of controlled substances from which to derive legislative intent.

Further, the *Cornelius* court's ruling that the charges against the defendant would be allowed to stand "despite numerous contingencies that [the defendant] neither anticipated nor could control," was made in response to circumstances which were entirely different from those presented here. In *Cornelius,* the defendant argued that he could not be held responsible for homicide because the baby's death depended on the success or failure of modern medicine. The argument was properly rejected because a defendant should not be permitted to rely on the success or failure of the professional acts of independent third parties to mitigate his criminal culpability. In contrast, we have determined that defendant Hardy should not be charged with the additional crime of *delivery* of cocaine on the basis of an act which, when committed, would only support a charge of *possession.* Unlike *Cornelius,* there is no evidence that the act complained of, the *use* of the controlled substance, precipitated or caused the birth of the child, or that the birth was reasonably foreseeable when defendant was not in labor or within hours of her delivery date.

[4] The question whether a *delivery* charge against a pregnant woman who is in labor, or is within hours of her anticipated delivery date, was intended by the Legislature when it enacted its most recent amendment to the controlled substances act, is not before us, and must be left for another panel to decide when the facts warrant it.

scientific method of determining the date and time of premature birth or miscarriage with any degree of certainty before labor contractions begin. It is not reasonable to interpret the controlled substances act to charge a pregnant woman who uses drugs with delivery to another person when the ingestion of the drugs occurred at a time when she had no reason to know that birth would occur within hours from the time she used the drug. This is especially so because another pregnant woman who uses illicit drugs at some point during her pregnancy, but does not give birth prematurely, could not be charged for engaging in the same activity.

The increasing percentage of infants being born with cocaine or other harmful substances in their systems is convincing evidence of the need to deter drug use by pregnant women. Because innocent lives are often permanently damaged by the scourge of drugs, the parties and the amicus curiae agree that an effective solution to the problem of prenatal drug use must be found, but they disagree on the approach to be taken.

The amicus health care providers have argued that the criminalization of prenatal drug use would deter pregnant women from seeking the prenatal care which is essential for a healthy baby. This position ignores the fact that any woman, whether pregnant or not, who uses illicit drugs such as cocaine may be charged with *possession* of a controlled substance, a felony. Our decision that defendant cannot be charged with *delivery* of a controlled substance will not interfere with prosecutions for the less serious offense of *possession*.

On the other hand, the prosecutor contends that the strong enforcement of our drug laws is the first step in protecting a newborn from its moth-

er's selfish and destructive conduct. That argument ignores the underlying problem of addiction and the compulsive behavior it generates. Regardless of the merits of these arguments, this Court cannot be persuaded by either, because it is bound by the existing framework of our laws to refrain from transforming into a criminal act what is now essentially a moral obligation by the pregnant woman to her developing fetus. The most appropriate forum to debate and resolve the complex social policy issues presented by the facts of this case is the Legislature.

In summary, because the criminal nature of the act complained of in this case was contingent upon the occurrence of the child's birth before the cocaine was eliminated from the fetus' system, and because defendant had no knowledge of or control over the date and time of the unexpected premature birth, I would hold that defendant cannot properly be charged with delivery of cocaine to another person. I agree that the circuit court erred in denying defendant's motion to quash, and in light of our resolution of this issue, the remaining arguments raised by defendant on appeal need not be addressed.