THE STATE OF OHIO, APPELLANT, *v.* GRAY, APPELLEE.

[Cite as *State v. Gray* (1992), 62 Ohio St.3d 514.]

(No. 90–1986—Submitted October 23, 1991—Decided February 12, 1992.)

*Anthony G. Pizza,* Prosecuting Attorney, *Thomas N. Tomczak* and *Mark E. Lupe,* for appellant.

*Julia A. Davis* and *Paul L. Geller,* for appellee.

*Patric Mary O'Brien,* urging reversal for *amicus curiae,* Ohio Prosecuting Attorneys Association.

*Randall M. Dana,* Ohio Public Defender, and *Allen V. Adair,* urging affirmance for *amicus curiae,* Ohio Public Defender.

CACIOPPO, J. The issue presented in this appeal is whether a parent may be prosecuted for child endangerment pursuant to R.C. 2919.22(A) for substance abuse occurring before the birth of the child.

It is well recognized that the criminal statutes of the Revised Code are to be strictly construed against the state and liberally construed in favor of the accused. R.C. 2901.04. Furthermore, words and phrases in Ohio statutes are to be construed "according to the rules of grammar and common usage." R.C. 1.42. It is with these principles in mind that we analyze R.C. 2919.22(A) and its applicability to the situation at bar.

R.C. 2919.22(A) provides in part:

"No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * * *"

As stated in *State v. Sammons* (1979), 58 Ohio St.2d 460, 12 O.O.3d 384, 391 N.E.2d 713, the apparent intention of the drafters of this section "was to punish a breach of statutory duty, when the breach results in a substantial risk to the health or safety of a child." *Id.* at 463, 12 O.O.3d at 386, 391 N.E.2d at 715. For the following reasons, we conclude that R.C. 2919.22(A) does not create a statutory duty which is breached when a parent uses cocaine prior to the child's birth.

A review of the terms "parent" and "child" within their common usage supports the conclusion that R.C. 2919.22(A) does not proscribe the conduct at issue. Under the common usage of the term "parent," Gray did not become a

parent until the birth of the child. Furthermore, the child did not become a "child" within the contemplation of the statute until she was born. As stated in *State v. Anders* (June 19, 1989), Stark Cty. C.P. No. JU 68459, unreported, at 3:

"The plain interpretation of the word is mother or father of a child who has been born alive. The word parent comes from the Latin *parere*, meaning to give birth. In addition, a plain reading of the statute indicates that this parent-child relationship must be in existence at the time of the creation of the substantial risk of harm. * * * "

The statutory and regulatory scheme in Ohio strongly indicates that where the concerns of the unborn are at issue, the legislature and administrative bodies have referred to the unborn specifically.[1]

In *Reyes v. Superior Court of San Bernadino Cty.* (1977), 75 Cal.App.3d 214, 141 Cal.Rptr. 912, the California Court of Appeals addressed the issue of whether a heroin-addicted mother could be prosecuted under the California child endangering law[2] for using heroin prior to the birth of her child. The court found that the word "child" as used in the California child endangering statute "was not intended to refer to an unborn child and that petitioner's prenatal conduct does not constitute felonious child endangering within contemplation of the statute." *Id.* at 216, 141 Cal.Rptr. at 913. In similar fashion, the Michigan Court of Appeals, in addressing a charge of delivery of cocaine based on the movement of cocaine through the umbilical cord after birth, held the relation of the statute to the facts was so tenuous that the court could not infer that the legislature intended it to apply absent unmistakable evidence of legislative intent. *People v. Hardy* (1991), 188 Mich.App. 305, 307–312, 469 N.W.2d 50, 52–53. Other states' courts have reached similar conclusions. See *Commonwealth v. Pellegrini* (Mass.Sup.Ct. Oct. 15, 1990), Plymouth No. 87970, unreported (mother charged with distributing cocaine to a person under eighteen); *State v. Gethers* (Fla.App.1991), 585 So.2d 1140 (mother charged with aggravated child abuse); and *State v. Inzar* (N.C.Sup. Ct. April 9, 1989), Robeson Cty. Nos. 90CRS6960 and 90CRS6961, unreported

---

1. See, *e.g.,* Ohio Adm.Code Chapter 3701–47; R.C. 2919.11 through 2919.14, 2107.34 and 2105.15.

2. California Penal Code Section 273a(1) as it existed at the time of the alleged offenses in the *Reyes* case provided in pertinent part: " 'Any person who, under circumstances or conditions likely to produce great bodily harm or death, * * * having the care or custody of any child, * * * willfully causes or permits such child to be placed in such situation that its persons or health is endangered, is punishable by imprisonment in the county jail not exceeding 1 year, or in the state prison for not less than 1 year nor more than 10 years.' " *Reyes, supra,* 75 Cal.App.3d at 216, 141 Cal.Rptr. at 913.

(mother charged with assault with a controlled substance and delivery of a controlled substance).

The state relies primarily upon our previous holding in *State v. Dickinson* (1971), 28 Ohio St.2d 65, 57 O.O.2d 255, 275 N.E.2d 599, in contending that Gray can be properly prosecuted under R.C. 2919.22(A). In *Dickinson,* this court held that an essential element of R.C. 4511.181 (vehicular homicide) is that the person whose life was taken has been born alive, *id.* at paragraph one of the syllabus, and that a viable fetus is not a person within the meaning of R.C. 4511.181, *id.* at paragraph two of the syllabus. The state contends by analogy that prenatal conduct can be punished under R.C. 2919.22(A) if the child endangered is subsequently born alive. We do not find the state's argument in this regard to be persuasive. As stated in *Anders, supra,* at 6–7:

" * * * [T]he *Dickinson* case must be distinguished on the following points. Firstly, 2919.22(A), unlike the homicide statutes, indicates that a certain relationship must be in existence between the defendant and the victim at the time the act of creating a substantial risk is done. The homicide statutes indicate that 'no person' shall commit the acts as described. Nowhere in 2919.22(A) does it indicate that mothers-to-be or pregnant women are in the specific group of people at whom the statute is directed. Secondly, 2919.22(A) does not contain proof of harm as an element of the crime. Obviously, a crucial element of the homicide statutes is proof that someone died. In 2919.22(A), the creation of the risk is the criminal conduct. Thirdly, California's ruling on a homicide statute, *Keeler v. Superior Court of Amador County,* (1970) [2 Cal.3d 619, 87 Cal.Rptr. 481,] 470 P.2d 617 was identical to Ohio's ruling in *Dickinson,* at the time the California court in *Reyes* ruled on the inapplicability of the California child endangering statute to a situation where the accused was a heroin addict whose twins were born addicted to heroin. Fourthly, the unique relationship between a pregnant woman and the developing fetus requires a careful look at what activities will be deemed criminal, and at what point during the pregnancy."

Based upon these obvious distinctions, we do not believe that the reasoning of *Dickinson* is applicable in the case at bar.

"The Legislature is an appropriate forum to discuss public policy, as well as the complexity of prenatal drug use, its effect upon an infant, and its criminalization." *Hardy, supra,* 188 Mich.App. at 310, 469 N.W.2d at 53. The Ohio Legislature currently has before it S.B. No. 82, which, if passed, would create the new crime of prenatal child neglect[3] to handle situations

---

3. Sub. S.B. No. 82 would enact a new R.C. 2919.221 as follows:
    "Sec. 2919.221. (A) As used in this section:

such as those at bar. " 'A court should not place a tenuous construction on [a] statute to address a problem to which the legislative attention is readily directed and which it can readily resolve if in its judgment it is an appropriate subject of legislation.' " *Hardy,* quoting *People v. Gilbert* (1982), 414 Mich. 191, 212–213, 324 N.W.2d 834, 844. "[I]f a legally cognizable duty on the part of pregnant women to their developing fetuses is to be recognized, the decision must come from the legislature only after thorough investigation, study and debate." *Stallman v. Youngquist* (1988), 125 Ill.2d 267, 280, 126 Ill.Dec. 60, 66, 531 N.E.2d 355, 361. The legislature is now undertaking the thorough investigation necessary to resolve this important and troubling social problem.

Therefore, we conclude that R.C. 2919.22 does not apply where a mother abuses drugs during her pregnancy. The judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES and H. BROWN, JJ., concur.

DOUGLAS and WRIGHT, JJ., dissent.

MARY CACIOPPO, J., of the Ninth Appellate District, sitting for RESNICK, J.

WRIGHT, J., dissenting. I must respectfully dissent. Tammy Gray gave birth to Sierra Gray. According to documents filed pursuant to discovery, at the time of birth, appellee's blood tested positive for the presence of cocaine.

"(1) 'Schedule I,' 'Schedule II,' 'controlled substance,' and 'prescription' have the same meanings as in section 3719.01 of the Revised Code.

"(2) 'Drug exposed at birth' means exposed prenatally to a schedule I or II controlled substance, as evidence by at least one of the following:

"(a) Symptoms of withdrawal from the schedule I or II controlled substance at birth;

"(b) Results of tests of the child's blood, urine, stool, hair, chromosomes, or other bodily fluids or components that indicate the presence of the schedule I or II controlled substance in the child's body;

"(c) Medical effects or developmental delays that are apparent during the first three months after the child's birth.

"(3) 'Use,' as it relates to a controlled substance, means injecting, ingesting, inhaling, or otherwise introducing into the human body a schedule I or II controlled substance.

"(B) No woman shall knowingly use a schedule I or II controlled substance at a time when she knows or reasonably should know that she is pregnant if the use of the schedule I or II controlled substance results in the child with whom she is pregnant being drug-exposed at birth.

"(C) Division (B) of this section does not apply to a woman if the woman was prescribed the schedule I or II controlled substance by a physician licensed under Chapter 4731. of the Revised Code and the woman used the controlled substance in a manner substantially consistent with the instructions of the prescribing physician, or of any pharmacist licensed under Chapter 4729. of the Revised Code, who provided instructions for the use of the medication."

A like test result was found as to the infant child. Several days later Sierra Gray was hospitalized because of cocaine withdrawal symptoms. Thereafter, Tammy Gray was indicted pursuant to R.C. 2919.22(A) for child endangerment.

The effects of cocaine use by a pregnant woman on her unborn child are both devastating and well documented.[4] I am satisfied that a woman who knowingly abuses cocaine while pregnant violates a duty of care to her unborn child and thus endangers that child when this action results in a substantial risk to the health and safety of that child following birth. Apparently the majority feels it is a "stretch" to treat an unborn but viable fetus as a "child." I disagree.

The United States Supreme Court has repeatedly referred to a viable fetus as an unborn child. See, *e.g.*, *Webster v. Reproductive Health Services, Inc.* (1989), 492 U.S. 490, 506, 109 S.Ct. 3040, 3050, 106 L.Ed.2d 410, 428.

The Ohio Prosecuting Attorneys Association, as *amicus*, argues and I agree that "[n]o one, not even a pregnant woman, has an unlimited right to do with her body as she pleases." The court in *Roe v. Wade* (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, recognized a constitutional right to personal privacy that includes a woman's right to terminate her pregnancy, but that right is limited by important state interests. *Roe v. Wade*, 410 U.S. at 152–154, 93 S.Ct. at 726–727, 35 L.Ed.2d at 176–178. "One such limiting interest is the ' *"life and the health of the viable unborn child."* ' [Emphasis added.] *Planned Parenthood Association of Kansas City Missouri, Inc. v. Ashcroft*, 462 U.S. 476 [487, 103 S.Ct. 2517, 2523, 76 L.Ed.2d 733, 742–743] (1983) [quoting the Missouri statute]."

*Amicus* continues, "But in the case at bar, the use of the test set out in *Roe v. Wade* and its prodigy [*sic*] to balance the privacy rights of a woman against the compelling interest the State possesses in the life and well-being of the unborn child is inappropriate. For here, we are not dealing with a fundamental right. There is no fundamental right to abuse cocaine. The act of using cocaine is not an act relating to a right connected with marriage,

---

4. See Chasnoff, Burns, Schnoll & Burns (1985), 313 New Eng.J.Med. 666 (reporting neurobehavioral disorders); Little, Snell, Klein & Gilstrap, Cocaine Abuse During Pregnancy: Maternal & Fetal Implications (1989), 73 Obstetrics & Gynecology 157 (documenting effects including anomalies of the heart); Chasnoff, Chisum & Kaplan, Maternal Cocaine Use & Genitourinary Tract Malformations (1988), 37 Teratology 201 (reporting an increased number of genitourinary tract malformations); Chasnoff, Bussey, Savich & Stack, Perinatal Cerebral Infarction & Maternal Cocaine Use (1986), 108 J. Pediatrics 456 (reporting on a stroke in a newborn exposed prenatally to cocaine). Babies born to cocaine users tend to have abnormally small heads and brains, suffer from abnormal irritability as infants and learning disorders later in life. Sherman, *Keeping Baby Safe From Mom*, Natl. Law J., Oct. 3, 1988, at 24, col. 1.

procreation, contraception, family relations, or child bearing. * * * No special protection is afforded the cocaine abuser just because she is pregnant. She is not spared the consequences of her illegal cocaine use because she is pregnant. Here you are *not* being asked to balance a woman's significant interest in bodily integrity against the States' interest in the health and welfare of its' [*sic*] children. No, you are being asked to balance a woman's desire to use illegal drugs, while she happens to be pregnant, with the health and welfare of her child. '[A]s a matter of law, the right of a woman to an abortion is different and distinct from her obligations to the fetus.' *In Re: A.C.* (D.C.App.1987), 533 A.2d 611. In the case at bar, the State is imposing no moral or medical injury or impairment upon a pregnant woman[;] it asks only what it asks of everyone, that is that she not abuse cocaine. A pregnant woman is not, due to her maternity, immune from the consequences of her illegal acts. This case is not about a woman's choice to conceive or carry a child. This is about the right of a child to be born healthy, free of injuries inflicted by the illegal acts of another." (Emphasis *sic.*)

I firmly believe that a child has the legal right to begin life without the burden of injuries inflicted upon her before she is born.[5]

While R.C. 2929.12 does not enumerate specific conduct which amounts to a "substantial risk" to the child, we have consistently held that the statute is not overbroad. See *State v. Daniels* (1980), 61 Ohio St.2d 220, 15 O.O.3d 232, 400 N.E.2d 399, certiorari denied (1980), 449 U.S. 851, 101 S.Ct. 142, 66 L.Ed.2d 63.

I must concur with the *amicus* that *any* person of ordinary intelligence has to know that *in utero* exposure to cocaine poses an unacceptable risk to the unborn child. Suggestions by the courts below that the duty of care found in the statute does not arise until after birth is both morally and legally unacceptable.

---

5. A cause of action may arise when a viable fetus is negligently injured in the womb and subsequently is stillborn. *Werling v. Sandy* (1985), 17 Ohio St.3d 45, 17 OBR 37, 476 N.E.2d 1053. *Williams v. Marion Rapid Transit, Inc.* (1949), 152 Ohio St. 114, 39 O.O. 433, 87 N.E.2d 334 (recognizing the common law's protection of unborn children against the criminal conduct of others, as well as their inheritance and property rights). Laws of Ohio do protect the unborn child who is subsequently born alive. See, *e.g., State v. Dickinson* (1971), 28 Ohio St.2d 65, 57 O.O.2d 255, 275 N.E.2d 599 (a viable unborn child subsequently born alive is a person within the meaning of the criminal statutes of Ohio); *Williams, supra* (civil law gives a child born alive a cause of action for injuries sustained while in the womb); *Jasinsky v. Potts* (1950), 153 Ohio St. 529, 42 O.O. 9, 92 N.E.2d 809 (viable infant who survives birth is a 'person' within the meaning of the wrongful death statute); *In re Ruiz* (1986), 27 Ohio Misc.2d 31, 27 OBR 350, 500 N.E.2d 935 (a viable fetus is a 'child' within the meaning of the child abuse statute and a child born addicted to heroin was abused by its mother). Once a child is viable, the state has a compelling interest in the health of the child.

As I believe that the words of the statute should be given their ordinary meaning, I would reverse the court of appeals and remand the matter for trial on the merits of the indictment.

DOUGLAS, J., concurs in the foregoing dissenting opinion.