**[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 197.]**

IN RE BABY BOY BLACKSHEAR.

[Cite as *In re Baby Boy Blackshear*, 2000-Ohio-173.]

*Juvenile law—Cocaine abuse—Termination of parental rights—When newborn's toxicology screen yields a positive result for an illegal drug due to prenatal, maternal drug abuse, the newborn is, for purposes of R.C. 2151.031(D), per se an abused child.*

When a newborn child's toxicology screen yields a positive result for an illegal drug due to prenatal maternal drug abuse, the newborn is, for purposes of R.C. 2151.031(D), *per se* an abused child.

(No. 99-1890—Submitted June 6, 2000—Decided October 25, 2000.)

APPEAL from the Court of Appeals for Stark County, No. 1999CA00018.

———————————

{¶ 1} On July 14, 1998, appellant, Tonya Kimbrough, gave birth at Mercy Medical Center in Canton, Ohio, to a baby boy, Lorenzo Blackshear. Shortly after his birth, certain persons of the hospital's medical staff noted that Lorenzo was "jittery." A toxicology screen of Lorenzo's urine indicated that Lorenzo had cocaine in his system. Kimbrough was also tested and was found, as well, to have cocaine in her system.

{¶ 2} The Stark County Department of Human Services ("SCDHS"), appellee, received a referral concerning Lorenzo. SCDHS commenced an investigation. The investigation showed the allegations concerning Lorenzo and Kimbrough to be accurate. SCDHS then, pursuant to R.C. 2151.27, filed a complaint with the Stark County Juvenile Court alleging that Lorenzo was an abused, neglected, and/or dependent child.[1]

---

1. The department was aware that it had intervened two years earlier when Kimbrough gave birth to her first cocaine-addicted baby.

{¶ **3**} On July 17, 1998, upon the release of Lorenzo from the hospital, SCDHS assumed temporary custody of Lorenzo. On September 30, 1998, a magistrate of the court held an evidentiary hearing. On October 6, 1998, the magistrate filed a decision finding Lorenzo to be an abused child. In so finding, the magistrate said that "[a]n unborn fetus is considered a person under Ohio's criminal code. See R.C. 2903.11 for example. Consequently an unborn fetus is a 'child' under R.C. 2151.031. Therefore harm which occurred prior to birth may constitute abuse." Kimbrough objected to the decision of the magistrate. Overruling the objection, the trial court approved and adopted the magistrate's decision.

{¶ **4**} Kimbrough appealed the judgment of the trial court. The court of appeals affirmed the trial court's judgment.

{¶ **5**} On March 6, 2000, the Stark County Family Court granted permanent custody of Lorenzo to Robin Blackshear, Lorenzo's biological father.

{¶ **6**} This cause is now before this court upon the allowance of a discretionary appeal.

———————————

*Paula M. Sawyers*, for appellee.

*J. Dean Carro*, for appellant.

*Wolman, Genshaft & Gellman* and *Susan Gellman; National Advocates for Pregnant Women/Women's Law Project, Lynn Paltrow, Susan Frietsche* and *David S. Cohen*, urging reversal for *amici curiae*, American Public Health Association, American Academy on Physician and Patient, American Nurses Association, Center for Women Policy Studies, Common Sense for Drug Policy, Division of Public Health and Policy Research of Montefiore Medical Center/Albert Einstein College of Medicine, Drug Policy Foundation, Family Watch, Institute for Health and Recovery, Legal Action Center, Legal Services for Prisoners With Children, Lindesmith Center, National Abortion and Reproductive Rights Action League of

Ohio, National Association of Alcoholism and Drug Abuse Counselors, Inc., National Center for Youth Law, National Council on Alcoholism and Drug Dependence, Inc., National Women's Health Network, NOW Legal Defense and Education Fund, Preterm, South Carolina Nurses Association, Women in Need, Inc., and Women's Re-Entry Resource Network.

———————————

**DOUGLAS, J.**

{¶ 7} Kimbrough presents us with a single proposition of law asking us to find that "[i]n enacting R.C. 2151.031, the Ohio General Assembly intended to exclude an unborn fetus from its definition of 'child.' " The trial court herein apparently permitted Kimbrough to frame the issue in this way because in response to Kimbrough's arguments, the trial court held that "[c]onsequently an unborn fetus is a 'child' under R.C. 2151.031." While the court of appeals, in affirming the judgment of the trial court, discussed, *inter alia*, the question of whether a fetus is a child for purposes of R.C. 2151.031, it appears that the court of appeals did not directly rule on that issue, finding, presumably, that such a determination was not necessary to the resolution of the case before the court. The court of appeals did say, to be sure, that "we hold that R.C. 2151.031(D) is constitutionally applicable to a child born alive with post-birth symptoms of the exposure of illegal drugs by the child's mother to the viable fetus." This would seem to be something less than an affirmance of the trial court's finding that a fetus is a child.

{¶ 8} The issue arises because Kimbrough contends that the trial court and the court of appeals have assumed authority that the General Assembly did not provide when the courts permitted SCDHS to take custody of Lorenzo to the exclusion of Kimbrough. The statute in question, R.C. 2151.031, and specifically subsection (D), provides:

"As used in this chapter, an 'abused child' includes any child who:

" * * *

3

"(D) Because of the acts of his parents, * * * suffers physical or mental injury that harms or threatens to harm the child's health or welfare."

{¶ 9} R.C. 2151.011(B) provides:

"As used in this chapter:

" * * *

"(6)(a) 'Child' means a person who is under eighteen years of age * * *." "Person" is not defined in R.C. 2151.011.

{¶ 10} Kimbrough contends that since the definition of "child" does not include a fetus, the General Assembly meant to exclude a fetus from the definition of "child" and since, Kimbrough contends, her action of using cocaine, which caused the injury to Lorenzo, occurred while Lorenzo was a fetus—and not while Lorenzo was a fully born child—R.C. 2151.031(D), the section defining who is an abused child, cannot be used to remove Lorenzo from her custody or control.  We disagree.

{¶ 11} We do not agree with Kimbrough in either how she has framed the issue or her interpretation of the statute.  Accordingly, we find that the issue is not whether a fetus is a child but rather whether the plain language of R.C. 2151.031(D) applies to Lorenzo and the facts of this case.[2]  Again, R.C. 2151.031(D) provides

---

2. The appellant, *amici,* and appellee have all cited a number of cases for our consideration.  The cases cited are not on point when the issue is framed as we have framed it and when the specific statute involved and the clear facts of the case at bar are considered.

For examples, and the list is not meant to be all-inclusive, appellant, *amici,* and appellee all cite *Werling v. Sandy* (1985), 17 Ohio St.3d 45, 17 OBR 37, 476 N.E.2d 1053, and *State v. Gray* (1992), 62 Ohio St.3d 514, 584 N.E.2d 710.  Appellant and appellee each cite *Jasinsky v. Potts* (1950), 153 Ohio St. 529, 42 O.O. 9, 92 N.E.2d 809, and *Williams v. Marion Rapid Transit, Inc.* (1949), 152 Ohio St. 114, 39 O.O. 433, 87 N.E.2d 334.  Appellant cites *In re Ruiz* (1986), 27 Ohio Misc.2d 31, 27 OBR 350, 500 N.E.2d 935.

The *Williams*, *Jasinsky,* and *Werling* cases all hinged on the *rights* of *children*, born alive or stillborn, to bring, or to have brought on their behalf, an action for injuries sustained because of the negligence of another, while they were still in their mother's womb.  The case now before us involves the *rights* of a *mother* with regard to whether her parental rights can be terminated or curtailed.  Accordingly, the cited cases are not on point.

The *Gray* case was a criminal case and involved whether a mother could be prosecuted for child endangerment where substance abuse occurred during pregnancy.  As this was a criminal case,

that, as used in R.C. Chapter 2151, an "abused child" includes any child who, "[b]ecause of the acts of his parents, * * * suffers physical or mental injury that harms or threatens to harm the child's health or welfare."

{¶ 12} It is clear that the action causing the injury to Lorenzo was taken by one of his parents, Kimbrough. It is clear that the action taken by Kimbrough caused Lorenzo injury—both before and after birth. It is clear that after his birth, Lorenzo was a "child" as defined in R.C. 2151.011(B)(6)(a). It is clear, as the court of appeals ably noted, that the discovery of cocaine in Lorenzo's system was by a postbirth test rather than by a prenatal test. It is clear, and there can be no doubt, that an alleged abused child, once born, falls under the jurisdiction of the appropriate juvenile court. R.C. 2151.23. It is clear that a child has legal and constitutional rights and that juvenile courts were created, in part, to protect those rights and to empower the state to provide for the care and protection of Ohio's children. It is clear that there can be no more sacred or precious right of a newborn infant than the right to life and to begin that life, where medically possible, healthy, and uninjured. And it is clear that to ignore these facts, these rights, and the numerous problems presented in these cases is to place our collective heads in the

---

the court was mandated by R.C. 2901.04(A) to strictly construe the criminal statute against the state and liberally construe the statute in favor of the accused. *Id.*, 62 Ohio St.3d at 515, 584 N.E.2d at 711. The case at bar is a civil proceeding and involves R.C. Chapter 2151, whose terms are not subject to the strict construction rule. In fact, in this case the opposite is true because R.C. 2151.01 mandates the court to liberally construe and interpret the sections of R.C. Chapter 2151, so as to provide for the care and protection of children and their constitutional and legal rights. Thus, *Gray* has no application to the case now before us.

Distinguishing *Ruiz* presents a more difficult problem but, in any event, the ultimate holding of *Ruiz* is in accordance with our decision today. Judge Pollex of the Court of Common Pleas of Wood County, Juvenile Division, felt "compelled to hold that a viable fetus is a child under the existing child abuse statute." *Ruiz,* 27 Ohio Misc.2d at 35, 27 OBR at 355, 500 N.E.2d at 939. This conclusion was reached after a review of a number of cases including *Williams*, *Jasinsky,* and *Werling*. We have already shown how those cases do not apply in the context of the case now before us. Thus, a child born alive who tests positive at birth for addiction to cocaine suffers from abuse and continued abuse no matter when the original abuse occurred.

proverbial sand and hope that the vexing questions will somehow just disappear. Well, they will not!

{¶ 13} Thus we apply the statute as written and to the facts of this case. Accordingly, we hold that when a newborn child's toxicology screen yields a positive result for an illegal drug due to prenatal maternal drug abuse, the newborn is, for purposes of R.C. 2151.031(D), *per se* an abused child.

{¶ 14} For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., RESNICK, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

RESNICK and LUNDBERG STRATTON, JJ., concur separately.

PFEIFER and COOK, JJ., dissent.

_____

**ALICE ROBIE RESNICK, J., concurring.**

{¶ 15} I concur with the syllabus and the judgment of the majority. I write separately to emphasize the limited scope of the majority's holding.

{¶ 16} As the majority correctly concludes, the relevant issue presented for our determination is whether the plain language of R.C. 2151.031(D) is applicable to Lorenzo Blackshear and the specific facts of this case. Accordingly, we need not reach the issue of whether a fetus is a child for purposes of this civil child-abuse statute. Thus, the law announced today is limited to factual scenarios akin to the case at bar, where a newborn tests positive for an illegal drug, as the result of prenatal maternal substance abuse.

{¶ 17} This is a disturbing issue, especially in light of the fact that a child who is exposed to an illegal drug following its birth and possesses traces of the drug in its system would, without a doubt, be considered an abused child.

6

{¶ 18} The consequences of prenatal maternal substance abuse are tragic and cannot not be ignored. According to one study, more than five hundred thousand "cocaine-exposed infants" are born in the United States each year. Schueller, The Use of Cocaine by Pregnant Women: Child Abuse or Choice? (1999), 25 J.Legis. 163, 165, citing Spencer, Prosecutorial Immunity: The Response to Prenatal Drug Use (1993), 25 Conn.L.Rev. 393, 394, citing a study by the National Association of Perinatal Addiction Research and Education.

{¶ 19} Accounts of drug-addicted newborns elicit intense emotional responses, such as anger and disbelief. We question how mothers can inflict this type of harm on their innocent children. Moreover, the full extent of harm done is often not known and, therefore, these children face uncertain futures.

{¶ 20} While the number of drug-addicted newborns reaches epidemic proportions, and society searches for methods to deal with this crisis, this court must adhere to its duty to interpret the laws in accordance with the General Assembly's intent. To do otherwise would yield consequences reaching far beyond those either intended or anticipated by the General Assembly. The majority must be commended for exercising restraint.

{¶ 21} " ' "A court should not place a tenuous construction on [a] statute to address a problem to which the legislative attention is readily directed and which it can readily resolve if in its judgment it is an appropriate subject of legislation." ' " *State v. Gray* (1992), 62 Ohio St.3d 514, 518, 584 N.E.2d 710, 713, quoting *People v. Hardy* (1991), 188 Mich.App. 305, 310, 469 N.W.2d 50, 53, and *People v. Gilbert* (1982), 414 Mich. 191, 212-213, 324 N.W.2d 834, 844. The courts are neither authorized nor properly equipped to make public policy determinations. If the General Assembly wants to include a fetus within the definition of a "child" for purposes of R.C. 2151.031, it certainly knows how to do so.

LUNDBERG STRATTON, J., concurs in the foregoing concurring opinion.

————————————

**COOK, J., dissenting.**

{¶ 22} Appellant's sole proposition of law asks this court to decide that R.C. 2151.031(D) excludes unborn fetuses from the definition of "abused child." But as the majority notes, even if fetuses were excluded from the definition, a reasonable construction of the statute could support the adjudication of a *newborn* as an abused child for injuries inflicted prebirth. Division (D) does not require that the parents *inflict injury after birth*. It merely requires that the child *suffer injury,* due to an act by the parents, that harms or threatens to harm the child's health or welfare. The statute focuses on the status of the child—not the timing of the injury's infliction. Despite my agreement with the majority on this point, I cannot join today's opinion and syllabus.

{¶ 23} The syllabus equates a positive drug screen, in every case, with "injury that harms or threatens to harm" a newborn. The majority's *per se* rule assumes that harm to a child's health or welfare—or the threat of such harm— necessarily follows from *in utero* exposure to an illegal drug. The magistrate and trial court likewise assumed that "[a] newborn who tests positive for an illegal narcotic is abuse[d] per se." Rather than determining by clear and convincing evidence that Lorenzo's exposure to cocaine caused or could have caused him harm, the court below (like the majority today) apparently proceeded from a generally accepted view that cocaine is harmful to its users.

{¶ 24} A positive result on a newborn's drug screen is probative evidence of *in utero* exposure to illegal drugs. Whether a newborn's *in utero* exposure to an illegal substance actually harms or threatens to harm the child is, however, a separate question that can only be answered by considering appropriate medical evidence. Such consideration is lacking in this case.

{¶ 25} Though there was evidence that Lorenzo was "jittery" soon after birth, the record contains no medical testimony linking this symptom to the positive drug screen. The agency's only witness at the adjudicatory hearing was a social

worker who observed Lorenzo shake briefly twice during a five- to fifteen-minute period. The day after birth, Lorenzo's physician noted "not much jittering" and decided that he would "just observe." The following day, Lorenzo's physician indicated that Lorenzo was "doing fine—no jitteriness." Three days after birth, Lorenzo was discharged. Though Lorenzo's physician noted a "positive drug screen" on the discharge summary, he identified no symptoms of injury that harmed or threatened to harm the child. Nor did the physician specify the need for any medication or special care for Lorenzo.

{¶ 26} I would remand this cause for a determination of whether Lorenzo's exposure to cocaine either harmed or threatened to harm him, as the plain language of R.C. 2151.031(D) requires. Accordingly, I respectfully dissent.

PFEIFER, J., concurs in the foregoing dissenting opinion.

————————————