Because there was clear and convincing evidence of neglect before the trial court, I respectfully dissent.
The complaint filed against the Tates asserted that Joseph Tate was a neglected child pursuant to R.C. 2151.03(A)(3) and (4). A neglected child under R.C. 2151.03(A)(3) is a child "[w]hose parents * * * neglect the child or refuse to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being[.]" R.C.2151.03(A)(4) defines a neglected child as a child "[w]hose parents * * * neglect the child or refuse to provide the special care made necessary by the child's mental condition[.]"
Joseph Tate was born on January 5, 2000, four weeks premature. He was septic and tested positive for cocaine. Children Services Board ("CSB") was notified, and after meeting with the Tates, established a safety plan, pursuant to R.C. 2151.412(B)(2) and Ohio Adm. Code 5101:2-34-37 and5101:2-39-07(I). The plan was established to ensure that the abused child would be provided the necessary care for his well-being, given that he had been born cocaine addicted and septic. See In re Baby Boy Blackshear
(2000), 90 Ohio St.3d 197, 199 (holding that "when a newborn child's toxicology screen yields a positive result for an illegal drug due to prenatal maternal drug abuse, the newborn is, for purposes of R.C.2151.031(D), per se an abused child").
Knowing that their child needed special care, and that CSB had the right to seek temporary custody of Joseph at that point, the Tates agreed to the safety plan provisions. They signed the plan on January 7, 2000, and agreed to follow it in order to protect Joseph from further abuse. CSB specifically advised the Tates that if they did not follow the safety plan requirements, CSB would seek custody. The Tates agreed to the following provisions under the safety plan: (1) Mrs. Tate would remain clean of drugs and alcohol and attend weekly AA/CA/NA meetings; (2) Mrs. Tate would keep her Community Drug Board appointments and follow all recommendations for treatment; and (3) Mr. Tate would act as the "main caretaker" for Joseph until Mrs. Tate completed a treatment program.
The record shows that the Tates failed to adhere to the safety plan. Mr. Tate reported to CSB that Mrs. Tate was again using cocaine. CSB also received a second referral from an unknown source that Mrs. Tate was indeed using drugs. CSB was unable to verify these reports, however, because the Tates left the state for several weeks. Furthermore, before leaving the state, Mrs. Tate missed several appointments at the Community Drug Board; Mrs. Tate missed four of six scheduled appointments. Mrs. Tate provided only three urine samples, and refused to drop other screens. The month after Joseph was born and the Tates had signed the safety plan, Mrs. Tate was taken by police to a detoxification center.
It is significant to note the importance of Mrs. Tate's need to comply with the established safety plan, which required her to remain drug free, and to prove that she was adhering to that provision, considering her baby tested positive for cocaine at birth due to her cocaine usage during pregnancy.
Because the record shows that the Tates failed to follow the safety plan, I would find that there was clear and convincing evidence that Joseph was a neglected child under R.C. 2151.03(A)(3), i.e. Joseph was a child whose parents refused to provide the proper and necessary care for his health and well-being. Accordingly, I would affirm the court of common pleas.