I agree with the majority's disposition of assignments of error one and two. However, I disagree with its disposition of the remaining assignments of error. This disagreement arises out of a fundamental dispute over how courts should interpret R.C. 2151.031, which defines which children are abused children. Hence, I am forced to dissent from the majority's opinion.
In her third assignment of error, Lori challenges the trial court's finding that her two oldest daughters, Chelsey and Jessica, were abused children. Under the Revised Code, an abused child is defined, in part, as follows:
"As used in this chapter, an `abused child' includes any child who:
"* * *
"(C) Exhibits evidence of any physical or mental injury or death, inflicted other than by accidental means, or an injury or death which is at variance with the history given of it. Except as provided in division (D) of this section, a child exhibiting evidence of corporal punishment or other physical disciplinary measure by a parent, guardian, custodian, person having custody or control, or person in loco parentis of a child is not an abused child under this division if the measure is not prohibited under section 2919.22 of the Revised Code.
"(D) Because of the acts of his parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare." R.C. 2151.031(C), (D).
The majority contends R.C. 2151.031(D) possesses "plain language" which is "clear and unequivocal", thereby abrogating the need for statutory interpretation. The majority further notes R.C. Chapter 2151 is to be liberally construed to protect children rather than strictly construed "to protect parents' reputations."
While I can agree R.C. Chapter 2151 is to be liberally construed to protect children, applying and interpreting R.C. 2151.031(D) without reference to R.C. 2151.031(C) ignores a fundamental rule of statutory construction. Namely, when this, or any other court, engages in statutory interpretation, we must presume every word in a statute is inserted to accomplish some definite purpose. State v. Wilson (1997),77 Ohio St.3d 334, 336, 673 N.E.2d 1347; R.C. 1.47(B). Courts have a duty to give effect to the words used in a statute. Erb v. Erb (2001),91 Ohio St.3d 503, 507, 747 N.E.2d 230. Because every word in the statute is designed to have legal effect, every part of the statute must be regarded where practicable so as to give effect to every part of it. SeeRichards v. Market Exchange Bank Co. (1910), 81 Ohio St. 348, 363,90 N.E. 1000.
Depending upon how they are construed, R.C. 2151.031(C) and (D) may define the same types of conduct as abuse. Indeed, subsection (D) may be applied so as to render subsection (C) useless, and thereby prevent every word in the statute from having legal effect. It is debatable whether the majority does this in its opinion. However, in order to ensure this does not happen, R.C. 2151.031(D) must be construed in the context of the entire statute so as to give every word in the statute legal effect.
As will be demonstrated below, when construing the whole statute together, it becomes clear that a child is an abused child under R.C.2151.031(D) when a particular thing, the child's "health and welfare", is harmed or threatened to be harmed. Conversely, under R.C. 2151.031(C) a child is an abused child once the parents' actions have reached a certain level of harm regardless of whether those actions harm or threaten to harm the child's "health or welfare". When the statute is interpreted in this manner, a violation of subsection (C) will not always be a violation of subsection (D) and vice versa. Thus, every part of R.C. 2151.031 would have legal effect.
The confusion which improper application of this statute may cause is highlighted by the presentation of the parties' arguments before this court. Lori maintains her actions were disciplinary in nature and, therefore, not abusive. Gary argues the evidence presented was sufficient to reasonably infer the children were in substantial risk of serious physical harm. These arguments would be appropriate if the action were brought pursuant to R.C. 2151.031(C). However, Lori was charged with abuse under R.C. 2151.031(D). A comparison of these two subsections is instructive.
With regard to R.C. 2151.031(C), the second sentence provides an exception to this particular definition of an abused child.
"Except as provided in division (D) of this section, a child exhibiting evidence of corporal punishment or other physical disciplinary measure by a parent, guardian, custodian, person having custody or control, or person in loco parentis of a child is not an abused child under this division if the measure is not prohibited under section 2919.22 of the Revised Code." R.C. 2151.031(C).
R.C. 2919.22 is a criminal provision, which, inter alia, prohibits any person from:
"Administer[ing] corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child." R.C. 2919.22(B)(3).
Thus, under R.C. 2151.031(C), except as provided in R.C. 2151.031(D), a child evidencing physical or mental injury other than by accidental means is not abused if the parent's corporal punishment is not excessive so to create a substantial risk of serious physical harm to the child, as defined by R.C. 2919.22(B)(3).
R.C. 2151.031(D), the section Lori was charged with violating, provides a child is an abused child if that child suffers physical or mental injury that harms or threatens to harm the child's health or welfare due to the acts of his parents, guardian, or custodian. Even if a parent's corporal punishment is not excessive under R.C. 2151.031(C), the punishment may still be abuse if it harms or threatens to harm the child's health or welfare. The key in distinguishing subsection (D) from subsection (C) is the injury in subsection (C) is of a particular type, serious physical injury, as defined by R.C. 2919.22(B)(3), while the injury in subsection (D) is to a particular thing, the child's health or welfare. In order to apply R.C. 2151.031(D) to this set of facts, we must determine what the legislature contemplated as "harm" or "threat of harm" to a child's "health and welfare".
The primary goal in statutory interpretation is to give effect to the legislature's intent. Bailey v. Republic Engineered Steels, Inc. (2001),91 Ohio St.3d 38, 39, 741 N.E.2d 121. To determine that intent, we initially review the language and purpose of the statute. State ex re.Mason v. Griffin (2000), 90 Ohio St.3d 299, 302, 737 N.E.2d 958. We presume every word in a statute is inserted to accomplish some definite purpose. Wilson, supra. When construing a statute, courts are to read statutory words and phrases in context and construe them according to the rules of grammar and common usage. Symmes Twp. Bd. of Trustees v. Smyth
(2000), 87 Ohio St.3d 549, 554, 721 N.E.2d 1057; R.C. 1.42.
As stated above, "health or welfare" must be a particular thing to which harm is done rather than a measure of the level of harm done. Of course, any form of corporal punishment would cause a child pain and, therefore, could be said to injure a child's health or welfare. However, if health or welfare were interpreted this broadly, then the second sentence in R.C. 2151.031(C) would be rendered meaningless. In other words, if all corporal punishment is abuse pursuant to R.C. 2151.031(D), then the second sentence within R.C. 2151.031(C) prohibiting only excessive corporal punishment as defined by 2919.22(B)(3) may as well not exist. The exception set forth in subsection (D) would overtake the rule, making this portion of R.C. 2151.031(C) moot. The legislature cannot have intended this result. See Wilson, supra. Thus, harm or threat of harm to a child's "health or welfare" must have some other meaning.
In order for an act to constitute abuse under R.C. 2151.031(D), it must cause an injury which harms or threatens to harm the continuing physical, emotional, or mental status of the child. Such a harm cannot be at a specific instance in time. See In re Baby Boy Blackshear (2000),90 Ohio St.3d 197, 202, 736 N.E.2d 462, (Cook, J., dissenting) (agreeing with the majority's conclusion that R.C. 2151.031(D) "* * * focuses on the status of the child, not the timing of the injury's infliction.") Instead, the "health or welfare" of the child referred to in R.C.2151.031(D) must be a continuing thing; the harm must be evidenced over time, not a temporary reaction to a specific incident. Accordingly, corporal punishment which is permitted by R.C. 2919.22 and R.C. 2151.031(C) may still be abuse if it harms or threatens to harm the soundness or general well-being of the child. Under R.C. 2151.031(D) whether or not the parent's actions were a form of corporal punishment is irrelevant.
Turning to the facts in the instant case, the evidence before the trial court was not legally sufficient to meet the clear and convincing standard of proof. Only a portion of the state's burden of proof was met. As the majority illustrates in great detail, Lori committed various acts which may threaten to harm her children's health or welfare. However, even conceding Lori's actions are very troubling, no testimony connects those acts with harm the children actually or potentially suffered to their health or welfare.
Rather than demonstrating how Lori's actions caused or could have caused the children ongoing physical, emotional, and mental injury, the record is devoid of evidence of present or future injury. The children's teachers testified that the children were clean, appeared well-fed, earned good grades in school and participated in many extracurricular school activities. Not one person testified the children showed any type of physical or emotional distress which resulted from the alleged abuse. Indeed, the children's teachers all testified the children showed no signs of the distress children who are the victims of abuse normally manifest. Without some sign of physical, emotional, or mental distress, the children could not be found to have suffered harm to their health or welfare. Nor did the trial court make such a finding.
Of course, if the children's health or welfare was threatened with harm, they would not be presently demonstrating any outward signs of distress. However, there must be some basis in the record for the finding by the trial court, that, as a result of Lori's actions, the children were threatened with harm to their health or welfare. In order to support the trial court's finding that Lori's acts were "* * * a threat to their health and welfare" (March 25, 1999 Judgment Entry), the State should have presented testimony from a child psychologist or some other sort of expert, for example, in this case the children's teachers, that Lori's behavior could lead these children to suffer harm to their health or welfare in the future. As the record currently exists, in order to find the children were threatened with harm we must assume a fact not in evidence, that her acts could harm these children in the future.
The state of the record in this case is identical to that inBlackshear. In both cases the trial court was presented with evidence of the mothers' conduct. However, there was no evidence presented that the mothers' conduct actually harmed or threatened to harm the children. The majority in Blackshear adopted a per se rule that assumes prenatal cocaine use in every case "harms or threatens to harm" a child as contemplated by 2151.031(D). Likewise, the majority in this case affirmed the trial court's assumption that Lori's conduct threatens to harm the children. In Blackshear, Justice Cook dissented from the majority's assumption as I do here. Rather than determining the issue by clear and convincing evidence, the majority in both cases have glossed over the language of 2151.031(D) which dictates that whether a parent's conduct
"* * * threatens to harm the child, is however, a separate question that can only be answered by considering appropriate medical evidence. Such consideration is lacking in this case." Blackshear, at 202, Cook, J. dissenting.
In Blackshear the only witness at the adjudicatory hearing was the social worker who observed the child for five to fifteen minutes and noticed the child shake briefly once or twice. The child's records showed the doctor noted a positive drug screen, but was devoid of any notation of symptoms of an injury which harmed or threatened to harm the child. Given the state of the record in In re Blackshear, Justice Cook concluded the case should be remanded to determine whether the mother's conduct threatened to harm the child "as the plain language of R.C. 2151.031(D) requires." Id. at 203. Following the same logic, the instant case should be remanded as well. There was no testimony whatsoever indicating Lori's conduct threatened to harm the children. The trial court made the assumption that Lori's conduct threatened and harmed the children without any evidence to support that assumption.
The majority believes Lori is asking for, and this dissent is engaging in, an improper evaluation of the credibility of the evidence of Lori's conduct. The majority misses the point. I do not disagree with their holding because I think that the fact the teachers were never told of Lori's acts or noticed any bruising evidences that Lori never took the actions alleged. Rather, it is because the state has failed to show how the children actually or potentially suffered any harm as a result of those acts. This dissent is not based on credibility issues, but rather upon the failure of proof at the trial court.
In the absence of any evidence of actual or threatened harm to the children's health or welfare, the trial court could not have found by clear and convincing evidence that the children were abused pursuant to R.C. 2151.031(D). The only evidence before the trial court was the nature of Lori's conduct. As its consequences, the teacher's testimony established there was no present harm. And correctly, the trial court did not make a finding of present harm. However, contrary to the trial court's finding, there is no evidence in the record that the consequences of Lori's behavior, however questionable and concerning it may be, would result in future harm to the children. The only evidence is the children's testimony of their immediate reactions to specific incidents. The record is devoid of any evidence at the adjudicatory hearing of the long term effect upon the children. Therefore, I would find the trial court erred in finding Chelsey and Jessica were abused children. Accordingly, I would find Lori's third assignment of error to be meritorious.
In her fourth assignment of error, Lori asserts the trial court erred in finding Kensie and Seth were dependent children. The trial court found these children to be dependent children in accordance with R.C. 2151.04(D). According to that provision, a child is a dependent child if
"both of the following apply:
"(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
"(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household." R.C. 2151.04(D).
A child's dependency must be established by clear and convincing evidence. In re Brodbeck (1994), 97 Ohio App.3d 652, 658, 647 N.E.2d 240. Because I would conclude Chelsey and Jessica are not abused children under R.C. 2151.031(D), Seth and Kensie could not have been adjudicated to be dependent children. Therefore, I would find Lori's fourth assignment of error to be meritorious.
Finally, because I would find the trial court erred in its ruling at the adjudicatory hearing, I would not address Lori's fifth and sixth assignments of error as they would be moot.
Because I would hold the trial court's finding that the children were abused and dependent children was not supported by competent, credible evidence, I would reverse its decision.