DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Elizabeth W. ("Mother"), has appealed from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child and placed him in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 {¶ 2} Mother is the natural mother of C.W., born September 24, 1999. C.W. was removed from his home on June 19, 2002 and was adjudicated dependent one month later. On April 23, 2003, CSB moved for permanent custody of C.W. and alleged, among other things, that C.W. had been in its temporary custody for at least 12 of the prior 22 months and that permanent custody was in his best interest.
 {¶ 3} Following hearing, the trial court granted CSB's motion for permanent custody and terminated the parental rights of both parents. The trial court found that C.W. had been in the temporary custody of CSB for 12 or more months out of a consecutive 22-month period and that permanent custody was in his best interest.
 {¶ 4} Mother and C.W.'s father, who is not a party to the current appeal, appealed the initial permanent custody decision to this Court. They challenged the trial court's finding on the so-called "12 of 22" prong of the permanent custody test, set forth in R.C. 2151.414(B)(1)(d). Specifically, they asserted that CSB could not base its permanent custody motion on the "12 of 22" ground because C.W. had not been in temporary custody for 12 months when CSB filed its motion. This Court agreed, as did the Ohio Supreme Court. See In re C.W., 9th Dist. Nos. 21809 and 21811, 2004-Ohio-1987, at ¶ 17-19, affirmed 104 Ohio St.3d 163,2004-Ohio-6411, at ¶ 26.
 {¶ 5} Following remand, the trial court granted the parents a six-month extension of temporary custody and a new case plan was filed. On January 31, 2005, CSB again moved for permanent custody of C.W. Following a hearing, the trial court found that C.W. had been in the temporary custody of CSB for more than 12 of the prior consecutive 22 months and that permanent custody was in his best interest.
 {¶ 6} Mother appeals and raises two assignments of error.
FIRST ASSIGNMENT OF ERROR
"THE TRIAL COURT'S DECISION TERMINATING [MOTHER'S] PARENTAL RIGHTS WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE [.]"
 {¶ 7} Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C.2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99. The trial court found that the first prong of the test was satisfied because C.W. had been in the temporary custody of CSB for more than 12 of the prior 22 months and Mother does not contest that conclusion.[1] Mother challenges only the best interest prong of the permanent custody test, contending that the trial court's best interest finding was against the manifest weight of the evidence.
 {¶ 8} When reviewing the weight of the evidence, this Court applies the same test in civil cases as it does in criminal cases. Tewarson v. Simon (2001), 141 Ohio App.3d 103, 115. "`The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" (Alterations sic). Id., quoting State v.Thompkins (1997), 78 Ohio St. 3d 380, 387, quoting State v.Martin (1983), 20 Ohio App. 3d 172, 175.
 {¶ 9} When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
"(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C.2151.414(D)(1)-(5).
 {¶ 10} Of relevance here is the factor set forth in R.C.2151.414(E)(11):
"The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child."
 {¶ 11} Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors. SeeIn re Smith (Jan. 2, 2002), 9th Dist. No. 20711, at *6; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, at ¶ 24.
 {¶ 12} The best interest prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the child. Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 13} Mother's interaction with C.W. was limited to weekly, supervised visits at the visitation center. The former caseworker testified that Mother's interaction with C.W. was appropriate and that C.W. was always happy to see her. She and other witnesses further explained, however, that C.W. referred to Mother as "Beth" and that he referred to his foster parents as "Mom" and "Dad."
 {¶ 14} C.W. had been living in the same foster home for three years prior to the hearing. When C.W. arrived at that home, he was underweight and had speech delays and behavior problems. The foster parents helped C.W. rectify these problems by putting him on a high-calorie diet and enrolling him in an integrated pre-school. C.W. was doing well in the foster home and had bonded with the entire family.
 {¶ 15} Among the family members living in the foster home was C.W.'s older natural sibling, who had been living there since shortly after her birth. That child was removed from Mother's home in 1998 and Mother's parental rights were terminated in May 2000. C.W. had been living with his older natural sibling for the three years prior to the hearing and had developed a close relationship with her. According to the foster father, the two "are true brother and sister." The foster parents adopted C.W.'s older sibling and have expressed a desire to adopt C.W. also.
 {¶ 16} The guardian ad litem testified that C.W. had expressed his desire to stay with the foster family. The guardian ad litem agreed that C.W. should stay in the foster home and explained that he was doing very well there. The guardian ad litem testified that she believed that permanent custody was in the best interest of C.W., emphasizing that Mother had not made the changes that were necessary to enable her to parent C.W.
 {¶ 17} Next, the trial court was required to consider the custodial history of C.W., including that he had been in the temporary custody of CSB for nearly three years. This Court has repeatedly stressed, however, that a long period of temporary custody "in and of itself cannot be held against the parent without considering the reasons for it and the implications that it had on this child." In re Smith, supra, at *6. Although C.W. was in the temporary custody of CSB for nearly three years, more than fourteen months of that period was attributable to the appeal of the initial permanent custody order.[2] This time should not be held against Mother, as she should not be penalized for pursuing her appellate rights. Moreover, this time should not be counted against Mother because CSB did not allow Mother to work toward reunification during this period. CSB's own witnesses explained that, during the appeal period, Mother was not allowed to visit with C.W., nor did the agency provide her with services. On the other hand, Mother testified that she stopped working on the goals of her case plan during that period not because the agency had stopped services but because she was waiting to determine the ultimate outcome of the appellate process.
 {¶ 18} During half of the three-year period of temporary custody, however, CSB was assisting Mother with the requirements of her case plan and Mother made little progress toward remedying the greatest problems that prevented her from parenting C.W. Mother did obtain housing during that time, but she failed to address the agency's primary concerns: that she had a substance abuse problem and mental health issues as well as a history of becoming romantically involved with violent men. Mother did not attend counseling for more than a few sessions and she did not submit urine screens consistently. CSB remained concerned that Mother was no better prepared to parent C.W. than she had been when he was removed from her care three years earlier.
 {¶ 19} The evidence demonstrated that C.W. needed a legally secure permanent placement and there were no other options available, such as legal custody to a relative. Relative placements had been pursued, but none was available.
 {¶ 20} The trial court was also required to consider the fact that Mother's parental rights to one of C.W.'s older siblings had been involuntarily terminated. See R.C. 2151.414(D)(5); R.C.2151.414(E)(11). On May 26, 2000, the trial court had terminated Mother's parental rights to an older child, also with the initials C.W. That child had been removed from Mother's custody shortly after birth in 1998 because she tested positive for cocaine when she was born. In its permanent custody order, the trial court emphasized that Mother did not regularly visit the child or make efforts toward reunification during the case planning period. Most significantly, despite having more than a year to work on her case plan, Mother did not complete drug treatment and did not submit regular urine samples to demonstrate that she was no longer using cocaine regularly.
 {¶ 21} Five years ago, the trial court found that Mother had a long-standing problem with cocaine abuse that prevented her from parenting her child and the evidence in this case demonstrated that Mother's parenting ability continued to be hampered by substance abuse. Although Mother's counsel emphasized that she had tested negative for drugs and alcohol on many occasions, Mother submitted only a fraction of the urine samples that her case plan required. Her case plan required her to submit urine samples three times per week, which would amount to 156 samples over a one-year period. The evidence demonstrated, however, that Mother submitted a total of 30 urine samples during the three-year period and most of those samples were submitted in a two-month period that was several months before the permanent custody hearing. The fact that Mother may have remained sober for a two-month period did not demonstrate that she had conquered her long-term problem with substance abuse. For Mother to demonstrate to CSB that she had her drug problem under control, CSB required proof of sobriety for at least six months. As one CSB witness explained, the agency assumes that a parent is using drugs or alcohol when he or she stops submitting urine samples with no explanation.
 {¶ 22} Also of relevance was the fact that Mother earlier lost custody of a third child. That child was placed in the legal custody of a grandparent, although there were no further details in evidence about that child or the circumstances surrounding Mother's loss of custody.
 {¶ 23} Given the evidence presented at the permanent custody hearing on each of the best interest factors, this Court cannot say that the trial court lost its way in concluding that permanent custody was in the best interest of C.W. The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY AS [CSB] FAILED TO USE REASONABLE EFFORTS TO REUNITE [MOTHER] AND HER MINOR CHILD."
 {¶ 24} Through her second assignment of error, Mother has asserted that the trial court erred in terminating her parental rights because CSB did not use reasonable and diligent efforts to reunite her with C.W. The premise of Mother's argument is that, at the hearing on its motion for permanent custody, CSB was required to prove that it had used reasonable and diligent efforts to reunify Mother with C.W. This Court recently rejected a similar argument in In re K.H., G.H., M.H., and D.H., 9th Dist. No. 22765, 2005-Ohio-6323, at ¶ 8-12.
 {¶ 25} CSB was required to prove that it put forth efforts toward reunification, but it was required to make that showing much earlier in the case planning process. R.C. 2151.419(A) explicitly requires the agency to establish that it has made reasonable efforts toward reunification or to prevent continued removal of the child from the home "at any hearing held pursuant to section 2151.28 [shelter care], division (E) of section2151.31 [ex parte emergency temporary custody], or section2151.314 [shelter care placement], 2151.33 [pre-adjudication temporary placement], or 2151.353 [initial disposition following adjudication] of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home[.]" Each of these hearings would necessarily occur several months before the permanent custody hearing, unless the agency had requested permanent custody in its initial complaint, which it did not do in this case.
 {¶ 26} CSB filed its motion for permanent custody after C.W. had been in its temporary custody for more than twelve months, under R.C. 2151.413, and the juvenile court held a hearing on that motion pursuant to R.C. 2151.414. R.C. 2151.419, by its explicit terms, does not apply to hearings held pursuant to R.C.2151.414. Consequently, R.C. 2151.419 did not require the trial court to make a finding of reasonable efforts at the permanent custody hearing. See In re S.S., 10th Dist. No. 05AP-204,2005-Ohio-4282.
 {¶ 27} In child dependency and neglect cases, the trial court is required to follow the procedures that are set forth in a comprehensive statutory scheme. In re D.R.,153 Ohio App.3d 156, 2003-Ohio-2852, at ¶ 13. "R.C. 2151.414 sets forth the procedures a juvenile court must follow and the findings it must make before granting a motion filed pursuant to R.C. 2151.413."In re C.W., 104 Ohio St.3d at ¶ 9. This Court has repeatedly held that R.C. 2151.414 places no duty on the agency to prove that it exerted reasonable and diligent efforts toward reunification. See, e.g., In re Thompson (Jan. 10, 2001), 9th Dist. No. 20201, at *5-6; In re Moore (Dec. 15, 1999), 9th Dist. Nos. 19202 and 19217, at *12-13. Mother has not argued that this Court should depart from its prior holdings on this issue, nor does she cite any legal authority to convince us that we should.
 {¶ 28} Because Mother has failed to demonstrate that the trial court was required to find reasonable efforts on the part of CSB at this late stage of the proceedings, the second assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J. Whitmore, J. concur.
[1] Although Mother takes issue with the specific dates used by the trial court in its calculation of time, she does not contest its ultimate finding that C.W. had been in CSB custody for a sufficient length of time to satisfy the "12 of 22" prong of the permanent custody test.
[2] It should also be noted that more than half of the appeal time was caused by CSB, not Mother. It was CSB who asked this Court to certify a conflict to the Ohio Supreme Court.