DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Kennisha T. ("Mother"), appeals the decision of the Summit County Court of Common Pleas, Juvenile Division, which adjudicated her minor child, P.T., an abused and dependent child. This Court affirms.
 I. {¶ 2} Mother gave birth to P.T. on October 20, 2006, at Barberton Citizens Hospital ("the hospital"). Several hours after P.T.'s birth, the child seemed jittery, which caused the nurses caring for her to call Dr. Michael DeLucia, the pediatrician covering the newborn unit when P.T. was born. Based on the nurses' concerns, Dr. DeLucia ordered a drug screen. The drug screen came back positive *Page 2 
for opiates, tricyclic antidepressant, and THC. After Mother was unable to explain the presence of THC in the baby's system, Summit County Children Services Board ("CSB") and the Barberton Police Department decided to take custody of the child pursuant to Juv.R. 6.
 {¶ 3} On October 23, 2006, CSB filed a complaint alleging that the child was abused, pursuant to R.C. 2151.031(D); neglected, pursuant to R.C. 2151.03(A)(2); and dependent, pursuant to R.C. 2151.04(C) and (D).
 {¶ 4} An adjudication hearing was held on December 7, 2006. The parties stipulated that the opiates and tricyclic anti-depressants were legally prescribed drugs. Therefore, the sole issue before the trial court was the fact that the child tested positive for THC. The magistrate's decision found that the child was an abused child pursuant to R.C. 2151.031(D) and a dependent child pursuant to R.C. 2151.04(C). The court dismissed the allegations of neglect pursuant to R.C.2151.03(A)(2) and dependency pursuant to R.C. 2151.04(D). Mother filed timely objections to the magistrate's decision. The trial court overruled Mother's objections and found that the child was an abused child pursuant to R.C. 2151.031(D) and a dependent child pursuant to R.C. 2151.04(C). Mother timely appealed the trial court's decision, setting forth two assignments of error for review.
 II. *Page 3 ASSIGNMENT OF ERROR I "THE TRIAL COURT'S DECISION THAT P.T. WAS A DEPENDENT AND ABUSED CHILD IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} Although Mother's first assignment of error states that she is challenging the trial court's finding that P.T. was a dependent child, the argument presented refers only to the finding that P.T. was an abused child. Therefore, this Court will limit its discussion to the actual argument presented.
 {¶ 6} To prove child abuse at an adjudicatory hearing, the State, to justify the government's intrusion into the family unit, must prove its allegations by clear and convincing evidence. See Juv.R. 29(E)(4). See, also, In re Sims (1983), 13 Ohio App.3d 37, 39.
 {¶ 7} As defined by R.C. 2151.031(D), an "abused child" includes any child who "[b]ecause of the acts of his parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare."
 {¶ 8} The Supreme Court of Ohio recently clarified the distinction
between manifest weight of the evidence challenges in criminal and civil cases.
The Court stated:
 "[T]he civil manifest-weight-of-the-evidence standard was explained in CE. Morris Co. v. Foley Constr. Co., 54 Ohio St.2d 279, syllabus (`Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence'). We have also recognized when reviewing a judgment *Page 4 
under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80-81. This presumption arises because the trial judge had an opportunity `to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' Id. at 80. `A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.' Id. at 81." State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202 at ¶ 24.
 {¶ 9} The Supreme Court of Ohio addressed this issue in In re Baby BoyBlackshear (2000), 90 Ohio St.3d 197, and stated: "When a newborn child's toxicology screen yields a positive result for an illegal drug due to prenatal maternal drug abuse, the newborn is, for purposes of R.C. 2151.031(D), per se an abused child." (Emphasis omitted.) Id. at syllabus.
 {¶ 10} Dr. Adolph Harper, Jr. testified on behalf of CSB at the December 6, 2007 adjudication hearing. Dr. Harper stated that he is an obstetrician/gynecologist and that Mother is his patient. Dr. Harper testified that he delivered the minor child that was the subject of the hearing. Dr. Harper testified that he is familiar with the drug Marinol and that a person would test positive for THC in a drug screen. Dr. Harper stated that Marinol is used to treat patients for nausea and vomiting, specifically patients undergoing chemotherapy and treatment for AIDS. Dr. Harper further testified that blood tests that he ordered for Mother came back negative for both AIDS and cancer. In addition, *Page 5 
Dr. Harper stated that he would never prescribe Marinol to one of his pregnant patients to treat nausea and vomiting. Dr. Harper testified that he did not know of any reason for P.T. to test positive for THC.
 {¶ 11} When questioned regarding the minor child's having a favorable APGAR score of 9.9, Dr. Harper stated that a child with an APGAR score of 9.9 could still test positive for illegal substances in his or her system. Dr. Harper explained that the APGAR would indicate whether or not there were any adverse effects as a result of an illegal substance being present in the child's system rather than whether or not the child had been exposed to an illegal substance.
 {¶ 12} Dr. Michael DeLucia, the pediatrician on duty when P.T. was born, also testified at the adjudication hearing. Dr. DeLucia testified that he ordered a toxicology screen on the minor child and that her urine tested positive for THC. Dr. DeLucia testified that THC is normally found in marijuana. Dr. DeLucia stated that he ordered the drug screen after the nurses on duty contacted him to say that the minor child was jittery several hours after her birth.
 {¶ 13} Dr. DeLucia stated that he discussed the results of the drug screen with Mother on October 21, 2006, the day after P.T. was born. Dr. DeLucia testified that Mother explained that she had eaten some brownies that may have had "weed" in them. Dr. DeLucia testified that since it was a Saturday and there was no social worker on duty, he asked the nurses to contact CSB. *Page 6 
 {¶ 14} Lisa Hall, a nurse in the maternity ward at the hospital, also testified on behalf of the State. Ms. Hall stated that she spoke with Mother the day after P.T. was born about the fact that P.T.'s system had tested positive for THC. Ms. Hall testified that, initially, Mother said that she had eaten some brownies that were laced with marijuana. Ms. Hall then stated that Mother said that she had also been in a car where the passengers were smoking marijuana. Ms. Hall further testified that Mother also said that she had a prescription for Marinol. With regard to the Marinol, Ms. Hall testified that Mother could not provide any proof that she had a prescription for the drug. Ms. Hall stated that she asked Mother who prescribed the Marinol and where she had the prescription filled. Ms. Hall testified that she was unable to verify the information that Mother gave her regarding her alleged prescription for Marinol. Ms. Hall further stated that Mother refused to let the hospital take any blood or urine samples for testing.
 {¶ 15} Annette Lucarelli, an intake social worker, was called to testify on behalf of CSB. Ms. Lucarelli testified that on October 21, 2006, she was sent to the hospital to make direct contact with Mother and P.T. Ms. Lucarelli stated that she talked with the hospital staff and Mother. Ms. Lucarelli testified that Mother said that she had a prescription for Marinol. Ms. Lucarelli stated that during the interview, Mother did not tell her that she had cancer or AIDS. Ms. Lucarelli testified that when she learned that Mother and P.T. were going to be discharged the following day, a call was made to the Barberton Police Department so that *Page 7 
they could do an assessment and determine whether to take custody of P.T. pursuant to Juv.R. 6.
 {¶ 16} Officer Bradley Braman of the Barberton Police Department also testified at the adjudication hearing. Officer Braman testified that he went to the hospital in response to a call he received regarding P.T. He stated that he spoke to the hospital staff and that he interviewed Mother. Officer Braman testified that Mother told him that she was taking a medication that would cause P.T.'s system to test positive for THC. Officer Braman stated that he was unable to verify that Mother was taking such a medication. Officer Braman testified that he gave Mother another chance to explain how P.T.'s system tested positive for THC, and she told him that it was possible that she ate laced brownies at a party and that she might have been in a car with people who were smoking marijuana. Officer Braman stated that following his conversations with Mother, he spoke with Ms. Lucarelli and the decision was made to take custody of P.T. pursuant to Juv.R. 6.
 {¶ 17} After reviewing the record, this Court finds that the trial court's adjudication of P.T. as an abused child was supported by some competent, credible evidence. Consequently, Mother's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION[.]" *Page 8 
 {¶ 18} In her second assignment of error, Mother contends that she was denied effective assistance of counsel. This Court disagrees.
 {¶ 19} In evaluating an ineffective assistance of counsel claim, this Court employs a two-step process as described in Strickland v.Washington (1984), 466 U.S. 668, 687. First, the Court must determine whether there was a "substantial violation of any of defense counsel's essential duties to his client." State v. Bradley (1989),42 Ohio St.3d 136, 141; State v. Lytle (1976), 48 Ohio St.2d 391, 396, vacated in part on other grounds. Second, the Court must determine if prejudice resulted to the defendant from counsel's ineffectiveness. Bradley,42 Ohio St.3d at 141-142, citing Lytle, 48 Ohio St.2d at 396-397. "An appellate court may analyze the prejudice prong of the Strickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice."State v. Kordeleski, 9th Dist. No. 02CA008046, 2003-Ohio-641, at ¶ 37, citing State v. Loza (1994), 71 Ohio St.3d 61, 83, overruled on other grounds. Prejudice exists where there is a reasonable probability that the trial result would have been different but for the alleged deficiencies of counsel. Bradley, 42 Ohio St.3d at paragraph three of the syllabus. Appellant bears the burden of proof, and must show that "`counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48, quoting Strickland, 446 U.S. at 687. *Page 9 
 {¶ 20} The law is clear that debatable trial tactics do not give rise to a claim of ineffective assistance of counsel. State v. Clayton
(1980), 62 Ohio St.2d 45, 49. Even if this Court questions trial counsel's strategic decisions, we must defer to his judgment. Id. The Ohio Supreme Court has stated that
 "`We deem it misleading to decide an issue of competency by using, as a measuring rod, only those criteria defined as the best of available practices in the defense field.' * * * Counsel chose a strategy that proved ineffective, but the fact that there was another and better strategy available does not amount to a breach of an essential duty to his client." Id., quoting Lytle, 48 Ohio St.2d at 396.
 {¶ 21} Mother contends that her trial counsel failed to question properly Dr. Harper regarding the toxicology report. In addition, Mother argues that her trial counsel failed to object to parts of Dr. Harper's testimony regarding the report. Mother has failed to show her trial counsel's choice of questions to the witnesses was anything but an acceptable trial strategy. As an attorney's selection of questions for a witness is within the realm of trial tactics, such choice made by an attorney does not constitute a deficient performance in itself. SeeState v. Mitts (Sept. 28, 2000), 8th Dist. No. 76963. Further, this Court has consistently held that "trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel." State v. Taylor, 9th Dist. No. 01CA007945, 2002-Ohio-6992, at ¶ 76. See, also, State v. Gumm (1995),73 Ohio St.3d 413, 428. Therefore, Mother's trial counsel's performance during Dr. Harper's testimony did not constitute a denial of effective assistance of counsel. See Clayton, 62 Ohio St.2d at 49. *Page 10 
 {¶ 22} Mother also argues that her trial counsel was deficient in that he failed to object to the admission of the toxicology report into evidence. However, Mother has failed to show how trial counsel's performance was deficient. Mother does not argue that her trial counsel should have forced CSB to produce the individuals who actually performed the drug screen and prepared the toxicology report. Further, Mother does not argue that the toxicology report was not sufficient and that trial counsel should have required that the actual test results be introduced into evidence. Instead, Mother's arguments focus on the fact that she was prejudiced by the introduction of the toxicology report into evidence. Based on the foregoing, we find that Mother has failed to meet the first prong of the Strickland test, i.e., that trial counsel's performance was deficient. See Gumm, 73 Ohio St.3d at 428. Accordingly, Mother's arguments do not rise to the level of ineffective assistance of counsel. See Strickland, 466 U.S. at 687. Mother's second assignment of error is overruled.
 III. {¶ 23} Mother's assignments of error are overruled. The decision of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
 The Court finds that there were reasonable grounds for this appeal. *Page 11 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
DICKINSON, J., BAIRD, J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.) *Page 1