DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Kennisha T. ("Mother"), has appealed from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 I {¶ 2} Mother had five older children who were removed from her care during April 2004 pursuant to another dependency and neglect case filed by CSB. During the pendency of that prior case, Mother moved to West Virginia and she has resided there since that time. Mother's rights to the older children were eventually involuntarily terminated by the Juvenile Division of the Summit County Court of Common Pleas, and this Court affirmed that judgment on appeal. See In re A.T., 9th Dist. No. 23065, 2006-Ohio-3919. *Page 2 
 {¶ 3} On October 20, 2006, while on a trip to Summit County, Mother gave birth to P.T., the only child at issue in this case. Because P.T. was born with THC in her system, CSB filed a complaint alleging abuse, dependency, and neglect. P.T. was later adjudicated an abused and dependent child and was placed in the temporary custody of CSB. This Court affirmed that judgment on appeal. See In re P.T., 9th Dist. No. 23618, 2007-Ohio-6293.
 {¶ 4} CSB moved for permanent custody of P.T. and Mother moved for a six-month extension of temporary custody. Following a hearing on both motions, the trial court terminated Mother's parental rights and placed P.T. in the permanent custody of CSB. Mother has timely appealed and raises two assignments of error.
 II Assignment of Error Number One "THE TRIAL COURT COMMITTED PLAIN ERROR IN PROCEEDING TO DISPOSITION, AND IN GRANTING A REASONABLE EFFORTS BY-PASS TO [CSB] ON GROUNDS [THAT THE] MAGISTRATE LACKED JURISDICTION UNDER JUV.R. 40(D)(3)(E), AND SUMMIT COUNTY JUV. CT. LOC. R. 3.03(H) TO PROCEED TO DISPOSITION OR TO HOLD A REASONABLE EFFORTS BY-PASS HEARING ON THE GROUNDS THAT THERE WAS AN AUTOMATIC STAY IN THIS CASE DUE TO THE FACT THAT OBJECTIONS HAD BEEN PREVIOUSLY FILED TO THE MAGISTRATE'S DECISION MADE AT THE ADJUDICATORY HEARING. [THE] TRIAL COURT ALSO COMMITTED PLAIN ERROR IN NOT HOLDING A DISPOSITIONAL HEARING OR REASONABLE EFFORTS BY-PASS HEARING AFTER IT HAD OVERRULED OBJECTIONS TO [THE] MAGISTRATE'S DECISION MADE AT THE ADJUDICATORY HEARING."
 {¶ 5} On December 18, 2006, the same day that the magistrate adjudicated P.T. an abused and dependent child, the trial court adopted the magistrate's decision. On December 29, 2006, Mother filed timely objections to the magistrate's decision. Mother has asserted that, after she filed her objections, the judgment was stayed until the trial court disposed of her objections. Because the trial court did not dispose of her objections until February 13, 2007, Mother *Page 3 
contends that, pursuant to Juv. R. 40(D)(3)(e)(i), the trial court was without authority to issue any further orders, including its January 11, 2007 orders pertaining to disposition and the reasonable efforts bypass.
 {¶ 6} The former version of Juv. R. 40(D)(3)(e)(i) provided, in relevant part:
 "* * * If the court enters a judgment during the fourteen days permitted by Juv. R. 40(D)(3)(b)(i) for the filing of objections, the timely filing of objections to the magistrate's decision shall operate as an automatic stay of execution of the judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered."
 {¶ 7} We will not reach the merits of Mother's argument for procedural reasons. Mother has conceded that she did not raise this issue in the trial court, but she has ignored the fact that she did not raise this issue in her prior appeal in this case. Mother appealed from the trial court's judgment that adjudicated P.T. an abused and dependent child and placed her in the temporary custody of CSB. Mother could have raised this issue in her prior appeal in this case, so the issue is therefore barred by res judicata. See In re Kangas, 11th Dist. No. 2006-A-0084,2007-Ohio-1921, at ¶ 69-70.
 {¶ 8} Although Mother has attempted to overcome this procedural hurdle by purporting to challenge to the trial court's subject matter jurisdiction, the automatic stay triggered by Juv. R. 40(D)(3)(e) did not divest the trial court of subject matter jurisdiction over this case. The subject matter jurisdiction of a court refers to the type of case that the court is authorized to hear. A court does not exceed its subject matter jurisdiction as long as the case before it involves "`any cause of action cognizable by the forum.'" State v. Swiger (1998),125 Ohio App.3d 456, 462, quoting Avco Fin. Serv. Loan, Inc. v. Hale (1987),36 Ohio App.3d 65, 67.
 {¶ 9} The subject matter jurisdiction of the juvenile court is set forth in R.C. 2151.23. That jurisdiction explicitly includes original jurisdiction over child abuse, dependency, and *Page 4 
neglect cases. See R.C. 2151.23(A)(1). This case clearly fell within the subject matter jurisdiction of the juvenile court because it involved allegations through CSB's complaint, and a later adjudication by the court, that P.T. was an abused and dependent child.
 {¶ 10} Mother's real argument is that the trial court improperly exercised its jurisdiction by proceeding with disposition and the reasonable efforts bypass while her objections to the magistrate's decision on adjudication were pending. The Ohio Supreme Court has explained that the improper exercise of jurisdiction is clearly distinguishable from the subject matter jurisdiction of the court:
 "The term `jurisdiction' is also used when referring to a court's exercise of its jurisdiction over a particular case. See State v. Parker, 95 Ohio St.3d 524, 2002-Ohio-2833, ¶ 20 (Cook, J., dissenting); State v. Swiger (1998), 125 Ohio App.3d 456, 462, 708 N.E.2d 1033. `"The third category of jurisdiction [i.e., jurisdiction over the particular case] encompasses the trial court's authority to determine a specific case within that class of cases that is within its subject matter jurisdiction. It is only when the trial court lacks subject matter jurisdiction that its judgment is void; lack of jurisdiction over the particular case merely renders the judgment voidable."' Parker at ¶ 22 (Cook, J., dissenting), quoting Swiger, 125 Ohio App.3d at 462, 708 N.E.2d 1033." Pratts v. Hurley, 102 Ohio St.3d 81, 2004-Ohio-1980, at ¶ 12.
 {¶ 11} Mother's claim that the trial court exceeded its authority under Juv. R. 40 merely challenges the trial court's authority to exercise its jurisdiction in this case. Even if her challenge had merit, it would have rendered the judgment voidable, not void, and necessarily should have been timely raised in the trial court and through her prior appeal to this Court. See id.
 {¶ 12} Because Mother did not timely raise this issue in the trial court or through her prior appeal, this Court will not reach its merits. The first assignment of error is overruled accordingly.
 Assignment of Error Number Two "THE TRIAL COURT ERRED IN FINDING THAT PERMANENT CUSTODY WAS SUPPORTED BY CLEAR AND CONVINCING EVIDENCE, AND *Page 5 
THE GRANT OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 13} Through her second assignment of error, Mother has maintained that the trial court's decision to place her child in the permanent custody of CSB was not supported by the evidence. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S.
(1996), 75 Ohio St.3d 95, 99.
 {¶ 14} The trial court found that the first prong of the permanent custody test was satisfied because, among other reasons, P.T. had been in the temporary custody of CSB for more than 12 of the prior 22 months. Mother has argued that this finding was not supported by the record because P.T. had not been in the temporary custody of CSB for a full 12 months when the permanent custody motion was filed, given that the time should have been tolled while her prior appeal was pending. In In reC.W., 104 Ohio St.3d 163, 2004-Ohio-6411, at syllabus, the Ohio Supreme Court held that the agency cannot rely on the "12 of 22" ground in its motion for permanent custody unless the child has been in the temporary custody of the agency for at least 12 months at the time the motion is filed.
 {¶ 15} Mother has cited no authority for her further argument that the running of the 12-month period was tolled while she pursued her prior appeal. Although this Court alluded to such *Page 6 
reasoning in In re E.T., 9th Dist. No. 23017, 2006-Ohio-2413, at ¶ 73, it has not directly determined whether, for purposes of the so-called "12 of 22" ground for permanent custody, the running of time is tolled while an appeal from the adjudication is pending. This Court need not reach that issue now, however, because the trial court made an alternate finding on the first prong of the permanent custody test.
 {¶ 16} The trial court also found that the first prong of the permanent custody test was satisfied because Mother's parental rights to five older siblings of P.T. had been involuntarily terminated. See R.C. 2151.414(E)(11). There was evidence before the trial court through witness testimony and a copy of the trial court's journal entry that Mother's parental rights to P.T.'s five older siblings, A.T., T.R., J.T., L.T., and A.T., were involuntarily terminated on December 30, 2005. This Court affirmed that judgment on appeal. See In re A.T., 9th Dist. No. 23065, 2006-Ohio-3919.
 {¶ 17} To demonstrate reversible error, Mother has the burden to demonstrate error as well as prejudice resulting from that error.Lowry v. Lowry (1988), 48 Ohio App.3d 184, 190, citing Gries SportsEnterprises, Inc. v. Cleveland Browns Football Co. (1986),26 Ohio St.3d 15, 28. "A prejudicial error is defined as one which affects or presumptively affects the final results of the trial." Miller v.Miller, 5th Dist. No. 06 CA 3, 2006-Ohio-7019, at ¶ 12 (Citations omitted.) Because Mother has not disputed that the court's finding under R.C. 2151.414(E)(11) was supported by the evidence presented at the permanent custody hearing and was sufficient to support the court's finding on the first prong of the permanent custody test, she cannot demonstrate reversible error. *Page 7 
 {¶ 18} Next, Mother has challenged the trial court's finding that permanent custody was in P.T.'s best interest. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D)(1)-(5).
 {¶ 19} R.C. 2151.414(E)(11) provides for a finding that the child cannot be placed with either parent within a reasonable time if the following applies:
 "The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child."
 {¶ 20} Mother's interaction with P.T. during the child's entire 18-month lifetime had been limited to weekly, supervised visits. Mother's attendance at visits was fairly consistent and visits usually went well. CSB had to terminate a few visits, however, because Mother would get angry about something, start yelling and screaming, and become too upset to continue the visit. The caseworker explained that Mother had been diagnosed with bipolar disorder but she was not taking any medication or receiving any counseling. Although Mother's behavior at visits was sometimes calm, at other times she became very hostile and loud and caused disruptions with *Page 8 
other families and employees at the visitation center and in the clinic. On different occasions, Mother had made false accusations about the foster parents, different caseworkers, the former guardian ad litem, and others. One visitation aide, who testified on Mother's behalf, conceded that he was often asked to supervise Mother's visits with P.T. because Mother clashed with many of the other visitation aides.
 {¶ 21} Although it should be noted that Mother was able to attend most weekly visits with P.T. even though she lived several hours away in West Virginia, it is also concerning that Mother chose to remain in West Virginia after her child was taken into custody in Summit County. The caseworker from West Virginia noted how unusual this case was for her because parents do not usually reside in another state while their children are in the custody of a children services agency. It is not clear why Mother remained in West Virginia because she did not have employment there, nor did she seem to have any family there.
 {¶ 22} It appeared that Mother was putting her own desires ahead of any commitment to her child. Although Mother testified that she planned to move back to Summit County to be close to P.T., she had not yet done so. Mother's attorney maintained that Mother would be moving back to this area shortly after the permanent custody hearing. At the end of the hearing, however, Mother asked the judge for some indication of whether he might grant her motion for a six-month extension because "if I don't get her back, it's no sense me moving here."
 {¶ 23} P.T. has been in the same foster home since her release from the hospital after birth. She is doing well there and is bonded with the family. The foster family is interested in adopting P.T.
 {¶ 24} Because P.T. was only 18 months old at the time of the permanent custody hearing, the guardian ad litem spoke on her behalf. She recommended either permanent custody *Page 9 
or a six-month extension of temporary custody. The guardian did not elaborate on her recommendation, except to note that Mother still had not complied with the requirements of the case plan and that paternity had not been established. She also noted that she had been assigned to this case for only four months.
 {¶ 25} P.T.'s custodial history had been spent entirely in CSB custody, as she was removed from Mother's custody shortly after birth. This Court has repeatedly stressed, however, that the time that a child spends in the temporary custody of the agency "cannot be held against the parent without considering the reasons for it and the implications that it had on this child." In re Smith (Jan. 2, 2002), 9th Dist. No. 20711 at *5. It is true, as Mother emphasizes, that several months of this time were attributable to Mother pursuing an appeal from the adjudication and this Court has stated that a parent should not be penalized for pursuing her right to appeal the adjudication and disposition. See In re E.T., at ¶ 73; In re C.W., 9th Dist. No. 22820,2005-Ohio-6739, at ¶ 17. It is also significant, however, that P.T. and Mother have never lived together and that during the entire time that this case was pending, Mother did not address her most significant parenting problems.
 {¶ 26} There was evidence before the trial court to support its conclusion that P.T. was in need of a legally secure permanent placement and that such a placement could be achieved only through a grant of permanent custody to CSB. Mother was unable to provide a suitable home for P.T. in the foreseeable future and, although CSB had pursued several relatives, there were no suitable relatives available to care for P.T.
 {¶ 27} The final best interest factor required the court to consider whether any of the factors set forth in R.C. 2151.414(E)(7)-(11) was applicable here. See R.C. 2151.414(D)(5). As *Page 10 
explained above, the trial court found that R.C. 2151.414(E)(11) applied because Mother's rights to five older siblings of P.T. had been involuntarily terminated in December 2005.
 {¶ 28} The guardian ad litem from the case involving Mother's older children, who was also the guardian ad litem at the beginning of this case, testified that Mother still has the same parenting problems now that she had several years ago: domestic violence, substance abuse problems, mental health issues, and a lack of insight and inability to accept responsibility for her own behavior.
 {¶ 29} The guardian further explained that Mother's five older children were exposed to domestic violence in the home, had been negatively impacted by it, and had even intervened in attempts to save their Mother. The older children had described to the guardian numerous incidents in which their mother's boyfriend, Tommy Ragland, had harmed Mother. During the current case, Mother was still involved with Tommy Ragland, as he often transported her to visits and she introduced him to the visitation aide as her boyfriend.
 {¶ 30} When a caseworker in West Virginia came to do a home study at Mother's home, Ragland was there. The West Virginia agency was concerned about a potential placement of P.T. in that home due to Ragland's presence and his abusive history with Mother. Mother had explained to the West Virginia caseworker that she had tried to get away from Ragland but that he kept following her. Mother described her relationship with Ragland as one of violence and fear and even stated that some of her children were conceived due to Ragland raping her. Mother also expressed concern that someday Ragland would kill her.
 {¶ 31} Mother also had a history of substance abuse in the prior case that continued to be a concern to both CSB and the West Virginia agency. P.T. was removed from Mother's custody due to her marijuana use while pregnant. Although Mother was required to submit urine samples *Page 11 
for regular drug screening, she had not done so. A CSB witness explained that it is the agency's policy to presume that all missed drug screens would test positive. Moreover, the West Virginia caseworker testified that, while she was at Mother's home, she observed a marijuana "bong."
 {¶ 32} Mother's mental health was a concern in the prior case and it continued to be a concern in this case. Mother was not receiving any treatment and she frequently overreacted to situations and became hostile and explosive with people. She caused such disruptions at the visitation center that some of her visits had to be terminated and she was barred from the CSB clinic for a period of time due to the disruptions she caused there. Mother also made threats and false accusations against the former guardian ad litem and many of the caseworkers in West Virginia and Ohio. The agencies in West Virginia and Ohio also remained concerned that Mother continued to take no responsibility for losing custody of P.T. or any of her other children, but she tended to blame others for her situation.
 {¶ 33} Given the evidence before the trial court, it reasonably concluded that permanent custody was in the best interest of P.T. As there was clear and convincing evidence before the trial court on both prongs of the permanent custody test, Mother's second assignment of error is overruled.
 III {¶ 34} The assignments of error are overruled and the judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
 The Court finds that there were reasonable grounds for this appeal. *Page 12 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 CARR, P. J. MOORE, J. CONCUR *Page 1